Dwayne JOHNSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 2001–SC–0245–TG, 2001–SC–0302–TG.

Supreme Court of Kentucky.

Nov. 21, 2002.

As Modified Jan. 13, 2003.

Harry P. Hellings, Jr., Dean A. Pisacano, Hellings & Pisacano, P.S.C., Kimberly A. Brooks, Covington, Counsel for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, Elizabeth A. Heilman, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

On December 17, 1998, Appellant, Dwayne Johnson, was indicted on two counts of first-degree trafficking in a controlled substance, one count of illegal possession of food stamps, and one count of being a convicted felon in possession of three handguns.

Under the authority of *Hubbard v. Commonwealth,* Ky., 633 S.W.2d 67 (1982), the last charge was severed from the other three, and Johnson was tried separately on that handgun possession charge. At the first trial (the drug trafficking trial), the jury found Johnson guilty of both of the trafficking offenses, but not guilty on the offense of illegal possession of food stamps. The jury recommended, and the trial judge imposed, a ten (10) year sentence for each conviction and ordered the sentences to run consecutively, for a total of twenty years' imprisonment. At the second trial (the illegal firearm possession trial), the jury found Johnson guilty of being a convicted felon in possession of a firearm. Upon being found guilty, Johnson and the Commonwealth entered a plea agreement on sentencing, which provided that Johnson would receive a five (5) year sentence that would run consecutively to his previously-imposed sentence, for a total of twenty-five (25) years' imprisonment. The trial court accepted the agreement and imposed sentence accordingly. Johnson now appeals to this Court as a matter of right.

On or about September 28, 1998, Newport police officer Sergeant James Henley received information from a confidential informant (CI) that Johnson was selling prescription Percocets, and that Johnson was in possession of stolen property. Subsequently, the Newport Police Department conducted a series of controlled buys of Schedule II narcotics from Johnson and an accomplice between October 1 and October 22, 1998.

On October 1, 1998, around 8:00 a.m., Sergeant Henley and Corporal Murphy met the CI in the parking lot in front of his apartment complex. The CI was searched and an audio transmitter and tape recording device were attached to him. The CI was given $150.00 in cash for the purchase of narcotics. The CI then returned to his apartment to page Johnson. Sergeant Henley and Corporal Murphy were listening in a van outside of the apartment complex.

After receiving the page, Johnson called the CI back and they arranged to meet in the parking lot. Minutes later a brown Mercury pulled into the parking lot and met the CI, who was waiting outside. Sergeant Henley testified that he recognized the brown Mercury as belonging to Johnson and that he also recognized him as the person driving the vehicle on this occasion. There was conversation between the CI and Johnson that lasted about a minute. Following the conversation, Johnson left the parking lot and the CI returned to the van. Upon returning to the van, the CI gave the officers twelve (12) Percocets, $2.00, the audio transmitter, and the tape recording device and tape.

A second controlled drug purchase was arranged and executed on October 22, 1998, at approximately 11:30 p.m. On this occasion, the CI met Sergeant Henley and

Corporal Murphy in the Travelodge Motel parking lot. The officers testified that the same procedure as in the first transaction was used, except on this occasion the CI was given $60.00 for the narcotics purchase. The CI then proceeded to Johnson's home. The CI entered the home and a conversation ensued between himself and Johnson. Following the conversation, the CI exited the house and proceeded back to the Travelodge. The CI met the officers in the parking lot, where he turned over five (5) white tablets that he purchased, the tape recording device, the audio tape, and the transmitter.

While the exact date cannot be clearly ascertained from the record (the affidavit and search warrant are absent), it appears that Sergeant Henley of the Newport Police Department drafted an affidavit on October 23, 1998, for the purpose of obtaining a search warrant for a house owned by Joan Walters. Walters was Johnson's ex-wife, and, apparently, Johnson still lived with her in her home. The warrant was issued and executed on the evening of October 23, 1998. The language of the warrant apparently described the items being sought as narcotics, Percocet, Valium, Tylenol V, and other controlled substances to include marijuana; records of narcotics trafficking, such as letters and documents to include currency; stolen property to include televisions, power tools and tobacco products; and any and all paraphernalia associated with illegal narcotics usage. During their search, the police seized various Schedule II narcotics, four (4) firearms, a quantity of food stamps, and some goods, which the police suspected were stolen.

## I. The Illegal Firearm Possession Trial

### A. Directed Verdict

■ Johnson first argues that the evidence was insufficient to support his conviction for illegal possession of a firearm. Thus, he argues that the trial court erred in denying his motion for a directed verdict of acquittal. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991).

■ In order to convict Johnson of being a convicted felon in possession of a firearm, the Commonwealth had the burden of proving (1) that he had previously been convicted of a felony, and (2) that he possessed a firearm. KRS 527.040. Johnson does not dispute the first element. Rather, he argues that the Commonwealth failed to prove the second element of possession.

■ Possession may be proven through either actual possession or constructive possession. *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir.1995) (discussing a federal statute that makes it unlawful for a felon to possess a firearm). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and intention at a given time to exercise dominion and control of an object, either directly or through others." *Id.*, quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.1990), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). Based on our review of the evidence presented at trial, we conclude that the jury could have reasonably believed that Johnson had constructive possession of a firearm.

The Commonwealth's evidence consisted of (1) proof that Johnson had resided in Walters' house since 1993, (2) proof of Johnson's prior conviction for first-degree possession of a controlled substance (a felony under KRS 218A.1415), (3) the three

pistols found during the search of Walters' home, and (4) the shotgun and ammunition found during the search. Johnson argues that it was unreasonable for the jury to rely on this evidence to find him guilty in light of the evidence presented by the defense.

Walters testified that the firearms in question were hers, that she purchased them legally, and that she was the registered owner of the firearms. Additionally, she testified that she consulted an attorney before purchasing the firearms in order to determine the legality of having the firearms in her home in light of the fact that Johnson was a convicted felon. Further, Johnson argues that he was not present in Walters' home when he was arrested and that he had another residence and only occasionally stayed with Walters.

Of course, the jury was free to disregard Walters' testimony and the other evidence put on by the defense. But in this case, even if fully believed, the defense's evidence does not necessarily negate the Commonwealth's proof.

■ "Constructive possession can be established by a showing that the firearm was seized at the defendant's residence." *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir.1993) (discussing the same federal statute discussed in *Kitchen*), *cert. denied*, 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). Thus, proof that Johnson resided or sometimes resided in Walters' home was sufficient proof for the jury to find that Johnson had the power to exercise control over the firearms. *See Kitchen*, 57 F.3d at 521. Further, the fact that Johnson was not arrested in Walters' home does not preclude a finding that Johnson had the power to exercise control over the firearms.

Therefore, we hold that the trial court did not err in denying Johnson's motion for a directed verdict.

### B. Introduction of the Shotgun

■ On appeal, Johnson argues that the shotgun was not relevant to the charge against him and should not have been admitted. On the surface, this argument makes little sense. A shotgun is a firearm within the meaning of KRS 527.040. "*Firearm* means any weapon which will expel a projectile by the action of an explosive." KRS 527.010(4). Thus, the shotgun, which was found in Walters' home where Johnson resided, was direct proof of a violation of KRS 527.040. Nonetheless, the trial court ruled otherwise.

■ Before the officer who found the shotgun could so testify, the defense counsel stated, "Note my continuing objection your honor—to the shotgun." To this statement, the trial court replied, "I stated that it (introduction of the shotgun) was for a limited purpose .... I can state ... for the record that the statute has to do with the handguns and not the [shotgun]." This ruling most certainly was based on KRS 527.040(4), which provides that "[t]he provisions of this section with respect to handguns shall apply only to persons convicted after January 1, 1975, and with respect to other firearms, to persons convicted after July 15, 1994." We base our conclusion on the fact that the record reveals that Johnson was convicted on November 3, 1993, of the prior felony upon which the firearm possession conviction was based. Thus, in this case, the shotgun could not be used as direct evidence of guilt. But certainly it was relevant to the issue of whether Johnson had possession of the three handguns, *i.e.*, constructive possession of the shotgun, which was found in plain view inside Walters' home, made it more likely that Johnson had possession of the three handguns, which were found in concealed locations. KRE 401.

### C. Validity of the Search Warrant

■ Prior to the drug trafficking trial—his first trial—Johnson moved in limine to suppress all evidence obtained as the result of the search of Walters' home. At the suppression hearing, he argued that the affidavit upon which the search warrant was issued did not establish probable cause to issue the warrant. Prior to his illegal firearm possession trial—his second trial—defense counsel noted that the validity of the search warrant had been challenged in the drug trafficking trial and was subject to appeal from that conviction. Nonetheless, for reasons unknown, the validity of the search warrant is raised on appeal from the illegal firearm possession conviction and not on appeal from the drug trafficking conviction. Consequently, we address Johnson's argument concerning the validity of the search warrant only in connection with his appeal from the illegal firearm possession conviction.

Johnson argues that the trial court abused its discretion in finding that the warrant established probable cause for the search. But Johnson failed to include a copy of either the warrant or the supporting affidavit. Therefore, there is nothing to review and we presume that the search warrant was valid. *Greer v. Commonwealth*, Ky., 455 S.W.2d 555, 556 (1970).

### D. Unauthorized Sentence

■ Upon conviction, Johnson entered into an agreement with the Commonwealth in which both parties agreed to a sentence of five years' imprisonment to be served consecutively with the twenty (20) year sentence he received at the conclusion of his drug trafficking trial, for a total of twenty-five years' imprisonment. On appeal, Johnson argues that this sentence violates the maximum term of years he can be sentenced to under KRS 532.110(1)(c), which provides:

When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that: . . . The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years.

■ Johnson's argument is that, because all of the offenses for which he was convicted were Class C felonies, the maximum aggregate sentence that could be imposed would be twenty years' imprisonment. *See* KRS 532.080(6)(b). This argument is correct as far as it goes. *See, e.g., Tabor v. Commonwealth*, Ky., 613 S.W.2d 133, 135 (1981). But the argument fails to take into account that Johnson agreed to the sentence as part of a plea agreement. A "defendant may validly waive the maximum aggregate sentence limitation in KRS 532.110(1)(c) that otherwise would operate to his benefit." *Myers v. Commonwealth*, Ky., 42 S.W.3d 594, 597 (2001). Thus, the trial court did not err in imposing the sentence unless it had a duty to determine the validity of Johnson's waiver before accepting Johnson's plea. We conclude that it had no such duty.

■ It has long been established that a knowing waiver of a constitutional right cannot be presumed on a silent record. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938) (Waiver of the constitutional right to counsel must be affirmatively shown on the record and the waiver must be knowingly and intelligently made.) But

no constitutional rights are implicated in Johnson's waiver of his statutory right to a maximum aggregate sentence of twenty years' imprisonment. Thus, there are no constitutional prohibitions against presuming that Johnson's waiver was valid in this case. Further, the plea agreement was reached with the advice of defense counsel. And waiver of the maximum aggregate sentence can be the product of trial strategy. *Myers,* 42 S.W.3d at 598. Thus, in this case, an inquiry into the validity of the waiver would focus primarily on defense counsel's knowledge of the law and defense counsel's rationale for negotiating the agreement. While such an inquiry might avoid the issue recurring on collateral attack, this is not sufficient reason to impose an affirmative duty on the trial court to inquire into the validity of the waiver. Therefore, we hold that the trial court did not err in accepting Johnson's plea and imposing a sentence in conformity with the plea agreement Johnson reached with the Commonwealth.

## II. The Drug Trafficking Trial

■ Johnson raises two, interconnected issues in connection with his appeal from the drug trafficking trial. First, Johnson argues that the trial court should have reviewed the audio tape recordings of the controlled drug buys before deciding whether to play the tapes to the jury. Next, he argues that the tapes should not have been admitted because they were inaudible. While we agree that the trial court should have reviewed the tapes before playing them for the jury, there is no showing that this failure should result in reversal of this case.

On August 16, 1999, defense counsel made a motion to exclude the audio tape recordings on grounds that they were inaudible. The trial court did not rule on the motion until defense counsel renewed the motion mere minutes before the trial was set to begin. In renewing the motion, defense counsel argued that the trial court needed to listen to the tapes prior to ruling on their admissibility. The trial court concluded that the audio quality, or lack thereof, of the tapes went to the weight of the evidence and not to the admissibility of the tapes. Thus, the trial court allowed the jury to hear the tapes without reviewing them first.

■ The trial court should have reviewed the tapes before admitting them. But failure to do so is not error in and of itself. *See United States v. Bryant,* 480 F.2d 785, 789 (2nd Cir.1973). Rather, the reason why a trial court should listen to an audio tape before ruling on its admissibility is to prevent error from occurring at trial. *Id.* That is, reviewing allows the trial court to rule on any objections and to cure any error through redaction or complete suppression before a tape is played for the jury. In a case, such as this one, where the only stated grounds for suppression is inaudibility of the audio tapes, the trial court's review should focus on whether the tape recordings were "sufficiently audible to be probative." *Id.* at 790, quoting *United States v. Weiser,* 428 F.2d 932, 937 (2nd Cir.1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971).

■ "It is well settled that the admission of tape recordings at trial rests within the sound discretion of the trial court." *United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983). But in this case, by failing to review the tapes before letting them be played for the jury, the trial court failed to exercise its discretion. A trial court's failure to exercise its discretion, however, does not equate to an abuse of that discretion. Rather, before the failure can even be argued as error, there must be a showing of some error or undue

prejudice flowing from the failure. In this case, none is argued on appeal and none is shown in the record.

We have reviewed the tapes in question. While many parts of the tapes are completely inaudible, some parts of the tapes, especially the first tape, are sufficiently audible and probative of the charges against Johnson. Thus, we conclude that the tapes were not so incomprehensible as to the render them wholly untrustworthy. *See id.* at 876, quoting *United States v. Jones,* 540 F.2d 465, 470 (10th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977). Therefore, we hold that, under the facts of this case, the trial court did not err in admitting the tapes.

For the reasons set forth above, the judgment of the Campbell Circuit Court is affirmed.

All concur.