Joseph **KOZAK** (A Minor), Appellant,

v.

**COMMONWEALTH** of Kentucky,
Appellee.

No. 2007–SC–000569–MR.

Supreme Court of Kentucky.

Nov. 26, 2008.

Rehearing Denied April 23, 2009.

Mary Gail Robinson, Department of
Public Advocacy, Frankfort, KY, Counsel
for Appellant.

Jack Conway, Attorney General of Kentucky, Todd Dryden Ferguson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

This case requires us to determine whether a juvenile may waive the right to a more lenient sentencing disposition under the juvenile code by entering into a plea agreement with the Commonwealth, even if the juvenile is not directly and explicitly informed of the juvenile code rights being waived. Because a proper waiver must be predicated upon the knowing relinquishment of a known right,[1] we hold that a juvenile cannot, under these circumstances, be found to have impliedly waived a right to which the juvenile was not explicitly made aware.

The relevant facts of this case are simple and uncontested. In August 2005, then-fifteen-year-old Joseph Kozak[2] was indicted in the Graves Circuit Court on six counts of sexual abuse in the first degree (a Class D felony) involving two victims and two counts of rape in the first degree (a Class A felony), both of which involved one of the same victims named in the sexual abuse charges. In March 2007, a then-seventeen-year-old Kozak filed a motion to enter a guilty plea based upon an offer by the Commonwealth, which would have amended the rape charges to sexual abuse with the Commonwealth recommending a total sentence of twenty years' imprisonment. In July 2007, Kozak was sentenced in accordance with the terms of the plea agreement and the Commonwealth's recommendation as to sentencing. At that time, the trial court denied Kozak's motion to be sentenced under the more lenient provisions set forth for juveniles in Kentucky Revised Statutes (KRS) 635.060. The trial court did order, however, that Kozak be committed to the Department of Juvenile Justice until his eighteenth birthday, at which time he was to be returned to the Graves Circuit Court for sentencing. Arguing that the trial court erred by not applying KRS 635.060, Kozak filed this appeal as a matter of right.[3]

Generally, minors in the Commonwealth of Kentucky are permitted to disavow a contract entered into before the minor reaches the age of majority.[4] But the Commonwealth argues here that Kozak, himself a minor, is strictly bound by the terms of his plea bargain, even though Kozak unquestionably was not made aware of all the pertinent terms and ramifications of that bargain by the trial court. Kozak, in turn, contends that the trial court was obligated to sentence him under the more lenient provisions of KRS 640.040(4) and, in turn, KRS 635.060. We hold that Kozak's sentence must be vacated because we conclude that implied waiver is improper in cases involving juvenile-status criminal defendants.

1. *See, e.g., Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.").

2. The record reflects that Kozak was born in December 1989. Although it does not shape the ultimate outcome of this case, the trial court's final judgment is erroneous when it provides that Kozak was sixteen years old in January 2005 (when he allegedly committed the offenses in question).

3. Ky. Const. § 110(2)(b).

4. *See, e.g., Mitchell By and Through Fee v. Mitchell,* 963 S.W.2d 222, 223 (Ky.App.1998).

Obviously, the Unified Juvenile Code provides greater protections, procedural and otherwise, than does the adult criminal justice system. Among those protections are KRS 640.040 and KRS 635.060. KRS 640.040(4) provides that "[a]ny youthful offender convicted of a misdemeanor or any felony offense which would exempt him from KRS 635.020(2), (3), (4), (5), (6), (7), or (8) shall be disposed of by the Circuit Court in accordance with the provisions of KRS 635.060." Since Kozak had been found to be a youthful offender, the question becomes whether his convictions (which, under the terms of the plea agreement were eight counts of sexual abuse in the first degree, a Class D felony), exempted him from the provisions of KRS 635.020(2).[5]

■ KRS 635.020(2) provides as follows:

If a child charged with a capital offense, Class A felony, or Class B felony, had attained age fourteen (14) at the time of the alleged commission of the offense, the court shall, upon motion of the county attorney made prior to adjudication, and after the county attorney has consulted with the Commonwealth's attorney, that the child be proceeded against as a youthful offender, proceed in accordance with the provisions of KRS 640.010.

Although Kozak was originally charged with two Class A felony counts, his plea agreement with the Commonwealth resulted in his only being convicted of eight Class D felonies. So under our clear precedent, Kozak did not fall within the purview of KRS 635.020(2).[6] Indeed, we have expressly held that a minor who was charged with a capital offense but only convicted at trial of a Class C felony does not fall under the provisions of KRS 635.020(2).[7] Although the defendant in *Canter* was convicted of a Class C offense after going to trial and Kozak was convicted of eight counts of a Class D offense by entering into a plea bargain agreement, we find that to be a difference without a true distinction. Indeed, a contrary conclusion would have the illogical result of having disparate sentencing schemes for juveniles who go to trial and those who enter into a plea agreement. In fact, allowing potentially more lenient sentencing for juveniles who go to trial versus those who enter into a plea agreement would serve as a potential disincentive for any juvenile to enter into a plea agreement. Thus, we hold that Kozak did not fall within the terms of KRS 635.020(2).

But before we hold that Kozak was entitled to be sentenced under KRS 635.060, we must address the Commonwealth's contention that Kozak waived any right to be sentenced under that statute's more le-

**5.** The Commonwealth relied solely upon KRS 635.020(2) and has not disputed Kozak's argument that none of the other subsections of KRS 635.020 are applicable. Thus, we will focus solely upon whether Kozak falls within the ambit of KRS 635.020(2).

**6.** *Canter v. Commonwealth*, 843 S.W.2d 330 (Ky.1992).

**7.** *Id.* at 332 ("The Commonwealth contends that Canter is not exempt from KRS 635.020(2), because that statute was satisfied when Canter was 'charged with a capital of-

fense.' We find the Commonwealth's position utterly untenable. First, KRS 640.040 is clearly and entirely intended to prohibit certain sentencing alternatives otherwise available under KRS 640.030. The Commonwealth's interpretation would render KRS 640.040(4) a nullity. Secondly, and more fundamentally, we cannot accept the proposition that the final disposition of any offender is dependent upon the original charge rather than the ultimate conviction. We will not presume guilt, and particularly not after acquittal.").

nient provisions.[8]

8. KRS 635.060 provides as follows:

If in its decree the juvenile court finds that the child comes within the purview of this chapter, the court, at the dispositional hearing, may:

(1) Order the child or his parents, guardian, or person exercising custodial control to make restitution or reparation to any injured person to the extent, in the sum and upon the conditions as the court determines. However, no parent, guardian, or person exercising custodial control shall be ordered to make restitution or reparation unless the court has provided notice of the hearing, provided opportunity to be heard, and made a finding that the person's failure to exercise reasonable control or supervision was a substantial factor in the child's delinquency; or

(2) Place the child under parental supervision in the child's own home or in a suitable home or boarding home, upon the conditions that the court shall determine, or place the child on probation under conditions that the court shall determine. At the time the child is placed on probation, the court shall explain to the child the sanctions which may be imposed if the court's conditions are violated, and shall include notice of those sanctions as part of its written order of probation. A child placed on probation shall be subject to the visitation and supervision of a probation officer or an employee of the Department of Juvenile Justice. Except as provided in KRS 635.083, a child placed on probation or parental supervision shall remain subject to the jurisdiction of the court until the child becomes eighteen (18) years of age, unless the child is discharged prior thereto by the court, except that if a person is placed on probation after the person reaches the age of seventeen (17) years and six (6) months, the probation shall be for a period not to exceed one (1) year; or

(3) Commit or recommit the child to the custody of the Department of Juvenile Justice, or grant guardianship to a child-caring facility, a child-placing agency authorized to care for the child, or place the child under the custody and supervision of a suitable person. If the child is detained in an approved secure juvenile detention facility or juvenile holding facility in accordance with KRS 15A.200 to 15A.240 at the time the child is committed or recommitted to the custody of the Department of Juvenile Justice, the Department of Juvenile Justice shall accept physical custody of the child, remove the child from the approved secure juvenile detention facility or juvenile holding facility, and secure appropriate placement as soon as possible but not to exceed thirty-five (35) days of the time of commitment or recommitment. The Department of Juvenile Justice shall pay for the cost of detention from the date of commitment or recommitment, on the current charge, until the child is removed from the detention facility and placed. All orders of commitment may include advisory recommendations the court may deem proper in the best interests of the child and of the public. The commitment or placement shall be until the age of eighteen (18), subject to KRS 635.070 and to the power of the court to terminate the order and discharge the child prior thereto, except that if the commitment or placement is after a person has reached the age of seventeen (17) years and six (6) months, the commitment or placement shall be for an indeterminate period not to exceed one (1) year. The court, in its discretion, upon motion by the child and with the concurrence of the Department of Juvenile Justice, may authorize an extension of commitment up to age twenty-one (21) to permit the Department of Juvenile Justice to assist the child in establishing independent living arrangements; or

(4) If the child is fourteen (14) years of age but less than sixteen (16) years of age, order that the child be confined in an approved secure juvenile detention facility, juvenile holding facility, or approved detention program as authorized by the Department of Juvenile Justice in accordance with KRS Chapter 15A for a period of time not to exceed forty-five (45) days; or

(5) If the child is sixteen (16) years of age or older, order that the child be confined in an approved secure juvenile detention facility, juvenile holding facility, or approved detention program as authorized by the Department of Juvenile Justice in accordance with KRS Chapter 15A for a period of time not to exceed ninety (90) days; or

(6) Any combination of the dispositions listed above except that, if a court probates or suspends a commitment in conjunction

It is clear that the General Assembly

has shown its intention to permit a minor to "waive any of the rights set out in the Kentucky Unified Juvenile Code, unless otherwise provided."[9] So as a general proposition, a juvenile may, by the express terms of a plea agreement, validly waive his rights under the juvenile code, including the right to be sentenced under KRS 640.040(4). After all, the Juvenile Code was surely enacted as a shield for juveniles, not as a sword to be used to disavow knowing and voluntary plea agreements. But we disagree with the Commonwealth's contention that Kozak properly waived the statutory protections to which he was otherwise due.

When our late colleague Justice McAnulty was a judge on the Kentucky Court of Appeals, he wrote the majority opinion in a case in which a juvenile was alleged to have waived his right to a preliminary hearing.[10] Then–Judge McAnulty noted that a waiver was "the voluntary relinquishment of a known right."[11] Because "children require special considerations due to their intelligence and experience," then-Judge McAnulty concluded that there was a valid issue as to whether the juvenile

had waived his right to a preliminary hearing, even though the juvenile had executed a waiver of rights form, because among other things, the trial court did not validly inform the juvenile of the consequences of waiving that important hearing.[12] Likewise, we hold that Kozak should not be found to have validly waived his statutory right to be sentenced under KRS 640.040(4) because he was not informed of the possible consequences of that waiver. Or, in other words, a juvenile should not be permitted unknowingly (or impliedly) to waive the important protections of the juvenile code.

We recognize that we have recently approved the doctrine of implied waiver in a case involving whether a defendant may be found guilty of an otherwise time-barred misdemeanor as a lesser-included offense of a Class D felony.[13] But that case did not involve juveniles, which we believe clearly distinguishes it from the case at hand. And we find that cases such as *Johnson v. Commonwealth*,[14] in which we held that a defendant's plea agreement validly waived that defendant's statutory

---

with any other dispositional alternative, that fact shall be explained to the juvenile and contained in a written order.

The Department of Juvenile Justice shall pay for the confinement of children confined pursuant to subsection (4) or (5) of this section in accordance with the statewide detention plan and administrative regulations implementing the plan.

9. *Humphrey v. Commonwealth*, 153 S.W.3d 854, 857 (Ky.App.2004).

10. *Id.*

11. *Id.* at 858.

12. *Id.* at 858–59.

13. *Commonwealth v. Oliver*, 253 S.W.3d 520, 525 (Ky.2008) ("The next issue is how the

waiver may be effected. Some courts have held that a defendant's request for an instruction on an expired lesser-included offense, without more, constitutes an implied waiver of the limitations defense. Other courts have held, however, that waiver of the statute of limitations requires determination on the record that waiver is knowing, intelligent, and voluntary, and does not otherwise contravene public policy. Although certainly the trial court does not err by including on the record the defendant's express choice between his limitations right and a lesser-included instruction, we agree with those courts that have found the request for an instruction generally sufficient to establish waiver, absent other evidence of record that a waiver was not intended.") (citations and quotation marks omitted).

14. 90 S.W.3d 39 (Ky.2002).

right to a certain maximum sentence,[15] are not controlling on the case at hand because those cases did not involve a juvenile defendant. Indeed, the justification for the existence of the juvenile code is to highlight and codify the General Assembly's obvious belief that juveniles should be afforded different, often less punitive, treatment than adults. In short, since juveniles lack the emotional and intellectual sophistication to waive impliedly the rights that the General Assembly has carefully provided them in the juvenile code, we cannot accept the Commonwealth's contention that Kozak has impliedly waived the juvenile code rights of which he was not made aware.

In sum, we now hold that a juvenile must be fully informed of his rights under the juvenile code by the trial court before the trial court may accept a juvenile's guilty plea. This safeguard should ensure that any juvenile's plea satisfies the requirement that the plea be knowingly and voluntarily made.[16] So in addition to informing the juvenile of the basic rights that any criminal defendant waives by pleading guilty,[17] the trial courts of this Commonwealth must also explain on the record the rights that the juvenile would waive (such as those set forth at KRS 635.060) by persisting in a plea of guilty. In other words, it is the trial court's obligation to make the juvenile fully cognizant of the procedural and substantive differences between being sentenced as an adult and being sentenced as a juvenile (such as the more lenient dispositional alternatives set forth at KRS 635.060) before accepting a plea agreement between the Commonwealth and a juvenile defendant. Although we do not believe it necessary to set forth a verbatim script that trial judges must follow in accepting a juvenile's guilty plea, we hold that the colloquy should follow the same general contours as that engaged in between trial courts and adults who wish to plead guilty, with the additional requirement that the trial court must inform the juvenile that a plea of guilty would waive his rights under the juvenile code (*i.e.*, the right in appropriate cases, such as this one, to be sentenced under the terms of KRS 635.060).

Our holding should not be misconstrued: we are not holding that a juvenile may not enter into a plea agreement with the Commonwealth. To the contrary, we express our agreement with the United States Supreme Court's observation that guilty pleas and plea agreements are "important components of this country's criminal justice system."[18] Rather, we simply hold that a trial court must inform the juvenile of the rights the juvenile would waive under the juvenile code before the trial court may accept a plea agreement involving a juvenile defendant in order for the juvenile's proposed guilty plea truly to be intelligently made.

If that thorough colloquy between the trial court and a juvenile defendant occurs

---

**15.** *Id.* at 44.

**16.** *See, e.g., Bronk v. Commonwealth,* 58 S.W.3d 482, 486 (Ky.2001) ("A guilty plea is valid only when it is entered intelligently and voluntarily.").

**17.** As aptly expressed by Professor Abramson, "[a] guilty plea constitutes a waiver of numerous constitutional rights, including the privilege against self-incrimination, a right to a trial by jury, and the right to confront one's accusers." 8 LESLIE W. ABRAMSON, KENTUCKY PRACTICE, CRIMINAL PRACTICE & PROCEDURE § 22:14 (4th ed.2003).

**18.** *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Although *Blackledge* did not appear to involve a juvenile defendant, the Court's sentiment regarding the importance of plea bargaining is universal.

and the defendant persists in the desire to plead guilty, then that minor's plea should be valid and binding upon the trial court's acceptance of the plea agreement. But because there was no such colloquy in this case, Kozak's sentence must be vacated; and this matter must be remanded for a hearing, at which the trial court must inform Kozak of the protections afforded him under the juvenile code (including those found at KRS 635.060), and must further inform Kozak that the plea agreement will constitute a waiver of those juvenile code rights. A juvenile's plea agreement is truly voluntary and knowing only after that juvenile has been fully informed of the juvenile's rights. So, on remand, after informing Kozak of his pertinent rights, the trial court should then inquire as to whether Kozak desires to persist in his plea of guilty. If Kozak desires to withdraw his plea of guilty, he should be granted permission to do so, with the understanding that a withdrawal of his guilty plea leaves Kozak subject to the charges contained in the indictment.[19]

For the foregoing reasons, the judgment of the Graves Circuit Court is vacated; and this matter is remanded for further proceedings consistent with this opinion.

All sitting. ABRAMSON, J., concurs. SCOTT, J., concurs by separate opinion in which CUNNINGHAM, J., joins. NOBLE, J., concurs in result only by separate opinion in which SCHRODER and VENTERS, JJ., join.

Concurring Opinion by Justice SCOTT.

Although I concur with the majority, I believe *Johnson v. Commonwealth,* 90 S.W.3d 39, 44 (Ky.2002) and *Commonwealth v. Townsend,* 87 S.W.3d 12 (Ky. 2002) support the proposition that a juvenile may impliedly waive provisions of the juvenile code under Kentucky law. I likewise believe it cannot be credibly argued, here, that Appellant's plea agreement was not entered into voluntarily and with knowledge. Indeed, Appellant made a sensible and strategic decision in accepting the plea. However, I concur with the majority for reasons that our holding establishes a prospective bright line rule that duly informed youthful offenders who enter into a plea agreement with the Commonwealth thereby waive their right to be sentenced under the juvenile code—irrespective of the Class of felonies agreed upon in the plea.

" 'A youthful offender, if he is convicted of, *or pleads guilty to, a felony* offense in Circuit Court, shall be subject to the *same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult convicted of a felony offense.*'" *Gourley v. Commonwealth,* 37 S.W.3d 792, 794 (Ky.App. 2001) (*quoting* KRS 640.030) (emphasis in original in part and added in part). The plain language of KRS 640.030 indicates that when a juvenile is in circuit court and pleads guilty to *any* felony, he will be sentenced under the adult provisions.

If Appellant was in all respects treated as an adult under the law, then I fail to see

---

**19.** We recognize that Kozak has now reached the age of majority, but believe he should still be afforded the protections of the juvenile code upon remand because a failure to do so would have the effect of punishing Kozak for exercising his right to file an appeal. Additionally, KRS 635.060(3) permits a juvenile to be committed to the Department of Juvenile Justice until the juvenile turns twenty-one, provided the juvenile and Department of Juvenile Justice have agreed. At the original sentencing, Kozak expressed his agreement to being committed to the Department of Juvenile Justice until he reaches the age of twenty-one. Of course, if Kozak either validly pleads guilty or is otherwise convicted, we express no opinion as to what sentence the trial court should impose.

why he should be treated otherwise *only* when it relates to his plea agreement. Cognizant of the very likely potential of substantial imprisonment, Appellant knowingly and intelligently entered into a plea agreement, with the advice of counsel and the agreement of the trial judge, to avoid this risk. Appellant agreed to a twenty year sentence. Therefore, implicit in this agreement is the knowledge that he will be held to this plea.

Thus, although I believe that Appellant did receive the same protections that a similarly situated adult would have been afforded when waiving his or her rights by plea agreement, which is all that is required under KRS 640.030, I join the majority on the basis of its holding, namely that a juvenile may plea bargain with the Commonwealth and waive alternative sentencing dispositions. To hold otherwise would remove the incentive for prosecutors to engage in plea negotiations with minors and thus lead to disproportionately severe sentences, which is a result I simply cannot endorse. KRS 640.030 mandates that a youthful offender who pleads guilty to any felony shall be sentenced under the adult provisions. This conclusion is inescapable. Accordingly, I concur with the majority.

CUNNINGHAM, J., joins this opinion.

Opinion by Justice NOBLE, concurring in result only.

I believe that the Appellant has correctly interpreted the effect of KRS 635.020(2) and KRS 640.040(4) that a youthful offender who is convicted only of Class D felonies must be sentenced as a public offender under KRS 635.060. Because Appellant was charged with two Class A felonies, Rape in the First Degree, he was transferred to Circuit Court as a youthful offender. There, he entered into a plea agreement with the Commonwealth that amended the two Class A felonies to Class D felonies. He pleaded guilty to, and was convicted of, eight counts of Sexual Abuse in the First Degree. Under the plain language of KRS 640.040(4), he thus became a juvenile "convicted of ... any felony offense which would exempt him from KRS 635.020...." The statute then further states that the juvenile "shall be disposed of by the Circuit Court in accordance with the provisions of KRS 635.060."

I also believe that by accepting amendment of the Class A felonies to Class D felonies, which is an imminently reasonable act and to which the Commonwealth said it would *recommend* a total of twenty years, the Appellant did not *waive* his right to be *sentenced* under the applicable law.

First, the recommendation of the Commonwealth is not binding upon the court, which may choose to run the several counts consecutively, concurrently, or some mixture of both. Thus the twenty-year recommendation is not even a certain term of the plea agreement, but in fact is only what the Commonwealth will ask the court to consider. If we are to say the Appellant contracted away his rights under the law, then the least requirement must be that the terms are certain, which they are not here. To premise waiver of significant statutory rights upon an essentially unknown term that is at best only a recommendation is simply not the proper application of the law of waiver and is insupportable.

The Commonwealth relies on *Johnson v. Commonwealth*, 90 S.W.3d 39 (Ky.2002), which does not address this reasoning in regard to what the elements of a plea agreement actually are. Without analyzing what the defendant had actually agreed to, the Court merely stated that he agreed to the sentence. This is clearly an incorrect statement, made because no ar-

gument was put forth about the content of the agreement. Instead, the *Johnson* Court was focused on whether the trial court was required to make a finding about the validity of the defendant's ability to make a waiver. Assuming complete agreement with the recommended sentence and failing to consider that such an agreement cannot bind the trial court, the Court found that the trial court had no duty to determine the validity of a waiver because the rights at issue were statutory rather than constitutional. However, the Court made a fundamentally unsound holding based on the misconception that waiver had actually occurred due to the defendant agreeing to a specific sentence when all he actually agreed to was the Commonwealth's' right to make a recommendation to the court. Neither the defendant nor the Commonwealth can limit the court's discretion in sentencing. *See Misher v. Commonwealth,* 576 S.W.2d 238, 241 (Ky.App.1978) ("The sentencing function of our courts on pleas of guilty is carried out by the judge. While the prosecutor and defense counsel, along with the defendant, may discuss and negotiate, they cannot impose sentence by agreement."). To the extent that *Johnson* holds otherwise, it should be overruled.

Second, there is clear legislative intent behind the Juvenile Code. Recognizing that in only certain extreme cases should children be treated like adults in the criminal justice system, the legislature designed approaches to children who commit crimes that are more rehabilitative than punitive. Recognizing that the youth of these offenders presages a long life of crime if there is not an intervention, and the lack of criminal culpability ascribed to children, the legislature made some of the juvenile dispositions mandatory. Such is the case with KRS 640.040(4), which requires the Circuit Court to make disposition of a youthful offender who no longer qualifies as such under the public offender provisions. The trial court *must* apply this statute when applicable, as it is here.

At common law, through the present day, our courts have recognized that children should not be held to the same standard as an adult in criminal matters. This is premised on the belief that children cannot form an adult mens rea in committing criminal acts. This historical belief led to codification of how juveniles should be treated in the criminal justice system, which has at its core rehabilitation through education, treatment and supervision. Juveniles were thus carved out of the Penal Code, and addressed in the Juvenile Code, in recognition of their significant differences from the adult penal population. Thus two significant Codes dealing with criminal matters of two distinct populations were legislated: juveniles and adults.

However, modern society has seen a rise in more heinous crimes being committed by children, which led to concerns about punishment and example. At least in part to address these concerns, the legislature enacted an exception to the Juvenile Code by creating a class of offenders known as youthful offenders, wherein the minor is prosecuted as an adult. Remaining mindful of the strong societal and precedential prohibitions against treating children as adult criminals, the legislature set a high bar for a child to be treated as a youthful offender. There are two steps in this process. First, the child must qualify to be tried as a youthful offender by falling under the requirements of KRS 635.020; then a child may, on conviction, be sentenced as an adult if he is not excluded under KRS 640.040(4). In order to apply case law relating to adults, the child must be qualified as a youthful offender both for purposes of prosecution and sentencing. This exception, with its stringent requirements, is meant to be narrow out of defer-

ence for longstanding views about the lesser culpability of juveniles. Thus, when the Appellant was *convicted* of offenses that disqualified him from being sentenced as an adult, a different view of the applicability of waiver as described in *Johnson* was mandated. Because juveniles are treated differently under the law from youthful offenders and adults, there is a greater duty to examine any alleged waiver for its content and applicability.

Third, even if waiver could be made to apply under this scenario, it certainly must be knowing and voluntary. The right the defendant was inferred to have waived in *Johnson* dealt with calculating a maximum aggregate sentence; here, the Appellant's very status is at issue, which involves a great deal more than the maximum length of the sentence to be imposed. The Commonwealth did not express in the plea agreement that Appellant was waiving his rights under KRS 640.040(4). Even if it had, the trial court should still be required to conduct a colloquy with the Appellant to make a record that the waiver of such substantial rights was voluntary, which was not done here. It matters not that no one appeared to think of the application of KRS 640.040(4) when plea negotiations were being conducted. The law is the law, and the Commonwealth in particular is held to have knowledge of it.

Fourth, holding otherwise would result in disparate sentencing for juveniles who enter into a plea agreement and those who choose to go to trial. Under the facts of this case, a youthful offender with the same charges could go to trial, obtain the same convictions, and would be entitled to be sentenced as a public offender, where here, the Commonwealth argues Appellant, *with the same convictions,* should be sentenced to twenty years in prison. Clearly, this takes away most of the incentive to enter into a plea agreement which

saves the Commonwealth, the Court and the Appellant significant time and resources. The type of punishment imposed on a juvenile should relate to the conviction that juvenile has, not the plea agreement.

SCHRODER and VENTERS, JJ., join.