Keith Edward MEYERS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–SC–000515–DG.

Supreme Court of Kentucky.

Oct. 25, 2012.

Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A Hickman Circuit Court jury found Appellant, Keith Edward Meyers, guilty of possession of a firearm by a convicted felon and of being a second-degree persistent felony offender (PFO). The trial court adopted the jury's recommended sentence of eighteen years in prison. The Court of Appeals subsequently affirmed, holding that the trial court did not abuse its discretion in admitting the testimony of Appellant's spouse. We accepted discretionary review to consider the trial court's application of KRE 504(c)(2)(A), and now affirm, albeit for different reasons.

## I. BACKGROUND

Appellant was indicted for (1) first-degree rape, (2) first-degree sodomy, (3) kidnapping, (4) first-degree wanton endangerment, (5) possession of a firearm by a convicted felon, (6) tampering with physical evidence, (7) theft by unlawful taking of over $300, (8) criminal attempt to commit murder, and (9) being a first-degree PFO.[1]

---

1. Prior to Appellant's trial, the trial court granted the Commonwealth's motion to

The trial court subsequently granted Appellant's motion to sever the firearm possession charge.

Prior to his trial for firearm possession, Appellant moved the court to prohibit his wife, S.C., from testifying pursuant to KRE 504(a)—the spousal testimonial privilege. On the day of Appellant's trial, the trial court ruled that S.C. could testify under KRE 504(c)(2)(A), an exception to the privilege.

The evidence at trial established that Appellant and his wife visited the home of Todd Rushing on May 9, 2008, and spent the night there. When Rushing left the next day, Appellant and S.C. remained at Rushing's home. Rushing testified that he kept several firearms in his house, including a loaded Taurus .380 firearm stored on the wall of his bedroom. According to S.C., she and Appellant got into an argument which escalated when Appellant took the firearm off the wall and pointed it at her. Appellant decided to leave the house, but before he left, he told S.C. he planned to draw police fire by shooting at them. When Rushing returned home, he noticed that his firearm was missing.

Danny Gilliland[2] testified that he attempted to call S.C. in order to diffuse the situation. However, when he called, Appellant answered S.C.'s phone. Appellant told Gilliland that he was on the run and was going to make the police shoot at him. During the conversation, Gilliland heard a gun cock.

Appellant eventually turned himself in and admitted to Detective Corey Jessup that he was a convicted felon and had been in possession of Rushing's firearm. According to Jessup, Appellant told him that he discarded the gun in a wheat field near where he was apprehended.

At the conclusion of the guilt phase, the jury convicted Appellant of possession of a firearm by a convicted felon. During the sentencing phase, the jury heard evidence from a probation and parole officer who testified that Appellant had been convicted of burglary and theft in 2005.[3] After hearing the officer's testimony, the jury recommended Appellant serve ten years in prison for the firearm possession charge—the maximum authorized sentence.

The probation and parole officer also testified at the PFO phase. She again informed the jury about Appellant's 2005 convictions, and also testified that Appellant had been convicted of first-degree burglary and aggravated rape in 1987. The jury subsequently found Appellant to be a second-degree PFO and recommended he serve an enhanced sentence on the firearm possession charge of eighteen years in prison. On February 26, 2009, Appellant and the Commonwealth came to an agreement concerning the other (severed) charges under the indictment.

On appeal to the Court of Appeals, Appellant argued that, the trial court abused its discretion in permitting S.C. to testify under KRE 504(c)(2)(A). The Court of Appeals disagreed and affirmed Appellant's conviction and sentence. Appellant, arguing that the trial court did indeed abuse its discretion and committed prejudicial error, asks this Court to reverse and remand the proceedings for a new trial. We decline to do so and affirm.

---

amend this charge to second-degree PFO.

2. It is unclear from Gilliland's testimony what his relationship was to the parties involved in this case.

3. Under KRS 532.055, "[e]vidence may be offered by the Commonwealth relevant so sentencing including ... [t]he nature of prior offenses for which he was convicted...."

Further facts will be developed as needed for our analysis.

## II. ANALYSIS

Appellant argues that the trial court abused its discretion in permitting S.C. to testify for two reasons. First, he asserts that the trial court erred by permitting his wife to testify under KRE 504(c)(2)(A). Second, he argues—for the first time on appeal—that his act of pointing Rushing's firearm at his wife was a privileged communication under KRE 504(b).

While we agree with Appellant that the trial court abused its discretion based on our interpretation of KRE 504(c)(2)(A), we hold that the trial court's decision to permit S.C. to testify was harmless error. Further, we will not address Appellant's argument under KRE 504(b) because it was not preserved.

### A. KRE 504(c)(2)(A)

Appellant first argues that KRE 504(c)(2)(A) was incorrectly applied to allow S.C. to testify. Here, we are faced with three issues that must be addressed. First, we must interpret the language of KRE 504(c)(2)(A). We do so de novo. *See Nash v. Campbell Cnty. Fiscal Court,* 345 S.W.3d 811, 816 (Ky.2011) ("Issues of law are reviewed de novo by a reviewing court."). Second, we must determine whether the trial court abused its discretion in permitting Appellant's spouse to testify under our interpretation of KRE 504(c)(2)(A). *See Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky. 2000) ("[A]buse of discretion is the proper standard of review of a trial court's evidentiary rulings."). Finally, because we find

that the trial court abused its discretion, we ask whether the trial court's error was harmless. *See Winstead v. Commonwealth,* 283 S.W.3d 678, 688–89 (2009) (*citing Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); RCr 9.24.

### 1. Interpretation of KRE 504(c)(2)(A)

We interpret KRE 504(c)(2)(A) as we would any statute and turn to traditional tools of statutory construction. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("We interpret the legislatively enacted Rules of Evidence as we would any statute."); *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 163, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) ("Because the Federal Rules of Evidence are a legislative enactment, we turn to the traditional tools of statutory construction ... in order to construe their provisions.") (internal citation and quotation marks omitted).

■■■ "General principles of statutory construction hold that a court must not be guided by a single sentence of a [rule of evidence] but must look to the provisions of the whole [rule] and its object and policy." *Cnty. of Harlan v. Appalachian Reg'l Healthcare, Inc.,* 85 S.W.3d 607, 611 (Ky.2002). In construing the rule, our purpose is to give effect to its drafters' intent.[4] *Id.* However, " '[t]he plain meaning of the [rule's] language is presumed to be what [was] intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.' " *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky.2005) (*quoting*

---

4. The "Evidence Rules Study Committee" began drafting the Kentucky Rules of Evidence in 1987. The General Assembly enacted the committee's final draft of the rules in 1990. *See* Act of Mar. 19, 1990, ch. 88, 1990 Ky. Acts 176. On May 12, 1992, we adopted "so much of the Kentucky Rules of Evidence as enacted ... by the General Assembly, as comes within the rule making power of the Court, pursuant to Ky. Const. § 116." Order, Supreme Court of Kentucky, May 12, 1992.

*Ronald Benton Brown & Sharon Jacobs Brown, Statutory Interpretation: The Search for Legislative Intent* § 4.2, at 38 (NITA, 2002)). "Only 'when [it] would produce an injustice or ridiculous result' should we ignore the plain meaning . . . ." *Id.*

The spousal testimonial privilege is codified in KRE 504. Under KRE 504(a), "[a] party has a privilege to prevent his or her spouse from testifying against the party as to events occurring after the date of their marriage." The relevant exception provided in KRE 504(c)(2)(A) states that "[t]here is no privilege under this rule ∙. . [i]n any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property of . . . [t]he other . . . ."

The charges from which Appellant's firearm possession charge was severed clearly included charges for "wrongful conduct against the person" of his wife. That is not at issue. Rather, at issue are: (1) whether the severed firearm possession charge is part of the same proceeding as the other charges and (2) if not, whether Appellant's firearm possession charge is, itself, "wrongful conduct against" the person of his wife. We hold that: (1) the severed firearm possession charge is not part of the same proceeding as the charges from which it was severed and (2) Appellant's possession of a firearm by a convicted felon charge was not, itself, "wrongful conduct against the person" of his wife.

### a. Not part of the same proceeding

■ Appellant first contends· that because his felony firearm possession charge was severed and tried separately from the other charges in the indictment (which certainly contained "wrongful conduct against" the person of his wife), it was a separate "proceeding" under KRE 504(c)(2)(A). The trial court found that since the charges all fell under the same

indictment, they were part of the same proceeding. We agree with Appellant.

RCr 9.16, entitled "Separate trials," is informative. Under RCr 9.16, "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses . . ., the court shall order *separate trials* of counts. . . ." (Emphasis added). Here, the trial court, pursuant to RCr 9.16, severed Appellant's felony firearm possession charge. If the severed trials are "separate," they cannot possibly be part of the same proceeding as the other charges. Thus, the trial court erred in interpreting KRE 504(c)(2)(A).

### b. Not wrongful conduct against S.C.

■ Having determined that the severed charges were tried in a separate proceeding, the issue then becomes whether Appellant's trial for felony firearm possession was, itself, a proceeding charging him with wrongful conduct against his spouse. KRE 504(c)(2)(A) states, in relevant part: "[t]here is no privilege under this rule . . . [i]n any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property of . . . [t]he other. . . ." Given the plain and ordinary meaning of these terms, we cannot conclude that Appellant's firearm possession charge alleged a crime committed against S.C.

■ KRS 527.040 provides, in relevant part: "[a] person is guilty of possession of a firearm by a convicted felon when he possesses, manufactures, or transports a firearm when he has been convicted of a felony, as defined by the laws of the jurisdiction in which he was convicted, in any state or federal court. . . ." In order to convict Appellant of the crime, "the Commonwealth had the burden of proving (1) that he had previously been convicted of a felony, and (2) that he possessed a firearm." *Johnson v. Commonwealth,* 90

S.W.3d 39, 42 (Ky.2003), *overruled on other grounds by McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky.2010). "Possession may be proven through either actual possession or constructive possession." *Johnson*, 90 S.W.3d at 42 (*citing United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir.1995)).

The facts giving rise to the charge are uncontroverted. Appellant and his wife spent the night at Rushing's home and stayed there when Rushing left the following day. That morning, Appellant removed the Taurus .380 off of Rushing's bedroom wall. At that time, Appellant was a convicted felon in possession of a firearm and therefore, guilty of the crime for which he was tried. These actions, which support his conviction, were not directed at his spouse. Further, Appellant's conduct after he came into possession of the gun—i.e., pointing the gun at S.C. and telling her he planned to shoot the police— is irrelevant to the crime charged. Thus, Appellant's trial for felony firearm possession cannot be considered a proceeding in which he was charged with wrongful conduct against his spouse.

### 2. Abuse of Discretion

■ Next, we ask whether the trial court abused its discretion in permitting S.C. to testify under our interpretation of KRE 504(c)(2)(A). *Goodyear*, 11 S.W.3d at 577. "[T]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581. Because the trial court allowed S.C. to testify in violation of the spousal testimonial privilege (as discussed above), the trial court abused its discretion in permitting S.C. to testify under KRE

504(c)(2)(A). Therefore, the trial court erred by allowing S.C. to testify.

### 3. Harmless error

■ Finally, we review the trial court's error to determine whether it was harmless. *Winstead*, 283 S.W.3d at 688–89; RCr 9.24. "A non-constitutional evidentiary error may be deemed harmless ... if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Id.* (*citing Kotteakos*, 328 U.S. at 750, 66 S.Ct. 1239). "The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' " *Winstead*, 283 S.W.3d at 689 (quoting *Kotteakos*, 328 U.S. at 765, 66 S.Ct. 1239).

Appellant argues that the trial court's decision to allow his spouse to testify under KRE 504(c)(2)(A) was not harmless error. Specifically, Appellant asserts that the case should be remanded for a new trial because S.C.'s testimony had a substantial influence on his sentence.[5] We disagree.

During the sentencing phase, the probation and parole officer testified that Appellant had been convicted of burglary and theft in Tennessee on March 16, 2005. Based on these aggravating factors, the Commonwealth subsequently asked the jury to recommend the maximum sentence of ten years. After the jury recommended Appellant serve ten years, the PFO phase of the trial began; At this time, the officer again testified as to Appellant's prior convictions in 2005. She also testified that

---

**5.** Appellant does not argue that S.C.'s testimony had any influence on the jury's finding of guilt. As stated, Appellant admitted that he

was guilty of the crime charged. Given Appellant's admission of guilt, we fail to see why the trial court conducted a guilt phase.

Appellant had been convicted of first-degree burglary and aggravated rape on July 24, 1987. Appellant then took the stand and called witnesses of his own in order to try and establish his good character. After hearing the evidence presented, the jury convicted Appellant of being a second-degree PFO and recommended an enhanced sentence of eighteen years in prison—two years less than the twenty-year maximum. The trial court subsequently adopted the jury's recommendation.

Given the evidence presented at the sentencing phase and the PFO phase, we cannot say that S.C.'s testimony substantially influenced Appellant's sentence. The facts surrounding Appellant's felony firearm possession conviction—including the fact that Appellant pointed the gun at S.C. and told her he planned to shoot the police—were not presented at either sentencing phase, as the proof offered by the Commonwealth focused on the nature of Appellant's prior convictions. Furthermore, Danny Gilliland also testified, without objection, concerning Appellant's plan to shoot the police. Thus, at least some of S.C.'s inadmissible testimony was submitted to the jury by another witness. As a result, the error was harmless and the Court of Appeals' judgment is affirmed.

### B. KRE 504(b)

Appellant also asserts that the trial court violated KRE 504(b) by permitting S.C. to testify. Specifically, Appellant asserts that pointing Rushing's gun at S.C. was a "confidential communication" that was "not intended for disclosure to any other person." KRE 504(b).

However, Appellant admittedly failed to raise this issue before the trial court. An appellate court "is without authority to review issues not raised in or decided by the trial court." *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky.

1989); *Matthews v. Ward*, 350 S.W.2d 500 (Ky.1961). Further, Appellant failed to address this issue in his Motion for Discretionary Review. "[I]ssues not raised in the [M]otion for Discretionary Review will not be addressed by this Court despite being briefed before us...." *Wells v. Commonwealth*, 206 S.W.3d 332, 335 (Ky. 2006). Thus, the issue is unpreserved and we decline to address it.

### III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and sentences.

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCHRODER, J., concurs in result only.