**J.D., A Child Under Eighteen,**
**Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2005–CA–002493–DG.

Court of Appeals of Kentucky.

Oct. 27, 2006.

Case Ordered Published by
Court of Appeals Dec. 22, 2006.

Dawn Fesmier, Frankfort, KY, for appellant.

Everett K. Preston II, Assistant Johnson County Attorney, Paintsville, KY, for appellee.

Before ABRAMSON, GUIDUGLI, and VANMETER, Judges.

*OPINION*

GUIDUGLI, JUDGE.

This juvenile matter is before the Court on discretionary review so that we may determine whether J.D.'s rights under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct.

1709, 23 L.Ed.2d 274 (1969), were violated when he admitted guilt to two charges. J.D. argues that the district court did not subject him to a *Boykin* colloquy when he decided to enter his plea. On the other hand, the Commonwealth argues that J.D.'s rights were protected in that the district court notified him of his constitutional rights, including those conferred by *Boykin*, during an earlier court appearance. We agree that the district court did not properly apprise J.D. of his *Boykin* rights when he decided to enter a plea. Hence, we reverse the Johnson Circuit Court's order affirming, and remand.

On August 16, 2004, Deputy Michael Johnson filed a Juvenile Complaint/Petition charging J.D. with third-degree Terroristic Threatening pursuant to KRS 508.080 after he threatened to physically harm family members with a gun that day. The petition also related that while his mother was on the telephone with a social worker, J.D. gave a 3–bladed knife to a toddler in the home. J.D. was detained, and appeared at a detention hearing on this charge the next day. He was represented by a public defender at this hearing. The audio tape of the August 17th detention hearing reveals that the district court reviewed J.D.'s constitutional rights with him, including his right to an attorney, to confront any witnesses and to bring in his own witnesses, to an adjudication hearing, and to an appeal. The district court then ensured that J.D. understood those rights. J.D. chose not to dispute the detention, and an adjudication hearing was set for September 14th. J.D. returned to detention pending the hearing.

Two subsequent Juvenile Complaints/Petitions were filed, one charging J.D. with being beyond the control of his parent[1] and the other for fourth-degree Assault in violation of KRS 508.030. Al-though filed on September 1st, the petition concerning the assault charge arose from an August 2, 2004, incident when J.D. grabbed his brother around the neck with his hands and raised him off of the floor with the intent to cause him physical injury. J.D.'s arraignment on this charge was also scheduled for September 14th.

J.D. appeared for the adjudication on the terroristic threatening charge and the arraignment on the assault charge as ordered on September 14, 2004. However, no adjudication or arraignment took place. Instead, J.D., through his attorney, admitted to the terroristic threatening and assault allegations as part of an agreement with the Commonwealth, and the beyond control charge was dismissed. The district court then committed J.D. to the Department of Juvenile Justice, with a recommendation that he be placed at Woodsbend Youth Development Center. The district court did not engage in any type of *Boykin* colloquy prior to accepting J.D.'s plea and committing him. In accordance with the district court's recommendation, J.D. was admitted to Woodsbend on October 19, 2004. The following August, J.D. was transferred to Middlesboro Group Home, a less restrictive placement. One month later, the district court entered a Permanency Order, which ordered that J.D. would remain committed to the DJJ and would be placed in another planned permanency living arrangement.

The issue at the heart of this appeal was raised about six months after J.D. was committed to the DJJ, when his public defender moved the district court to terminate his commitment to the DJJ based upon a *Boykin* violation. As grounds, J.D. asserted that during the September 14, 2004, hearing when he entered his plea, the district court did not engage in any

---

1. The district court record does not contain any documentation concerning this charge.

dialogue with him concerning his constitutional rights. For this reason, he argued, the proceedings were not conducted as required by law and his commitment should be terminated pursuant to KRS 610.120. The district court denied the motion in a handwritten docket order entered March 29, 2005: "Mt. Overruled. Juvenile was advised of his constitutional rights at arraignment on 8–17–04. He was represented by counsel at all parts of the proceeding. Juvenile wasn't charged with a felony." J.D. appealed the district court's decision to the Johnson Circuit Court. On appeal, the circuit court affirmed the district court's order, holding that "the plea by said Juvenile was valid, and due to the charges being misdemeanors rather than felonies, the charges would not be used as an enhancement under *Boykin*[.]" This Court accepted discretionary review, and we now reverse.

On appeal, J.D. cites to this Court's opinion of *D.R. v. Commonwealth*, 64 S.W.3d 292 (Ky.App.2001), as the controlling law on this issue and for its statement that *Boykin* applies in juvenile cases. Because the district court did not properly apprise him of his *Boykin* rights at the time he entered his admission, J.D. contends that his plea was not knowing and voluntary and his resulting commitment should be terminated. On the other hand, the Commonwealth points out that J.D. was fully informed of his constitutional rights during an earlier appearance [2] and was represented by counsel when he entered his plea, making the plea valid.

**2.** The Commonwealth identifies this hearing as the arraignment, but it was actually the detention hearing on the terroristic threatening charge.

**3.** These federal rights are listed as the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to

*Boykin* is the seminal case in the arena of the validity of a guilty plea. In *Boykin*, the U.S. Supreme Court stated that "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. . . . We cannot presume a waiver of these [ ] important federal rights [ [3] ] from a silent record." 395 U.S. at 243, 89 S.Ct. 1709. The Supreme Court ultimately held that the trial court committed error when it "accept[ed] petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Id.* at 242, 89 S.Ct. 1709. In *D.R.*, this Court stated that "it [is] beyond controversy that *Boykin* [ ] applies to juvenile adjudications." 64 S.W.3d at 294, FN2. The *D.R.* court went on to state that:

> The validity of a guilty plea must be determined not from specific key words uttered at the time the plea was taken, but from considering the totality of circumstances surrounding the plea. . . . These circumstances include the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made.

*Id.* at 294.

The Sixth Circuit Court of Appeals has also weighed in on this issue in a federal case arising out of the Western District of Kentucky, for which the juvenile had counsel. In *Laswell v. Frey*, 45 F.3d 1011, 1015 (6th Cir.1995), the court stated:

> Upon review, this Court notes that an adjudication demands a determination of the truth or falsity of the allegations, and that a determination of the truth

confront one's accusers. *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709. In *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 1986, 29 L.Ed.2d 647, 661 (1971), the Supreme Court held that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement."

requires more than the simple verbal admission at the detention hearing at issue in the instant case. The Court is persuaded that, because no inquiry was made of the veracity of the charges or admission, because no inquiry was made to determine if "the plea" was voluntarily made, and because no inquiry was made as to the nature of the charges, that the proceedings cannot later be transformed from a determination of probable cause for detention into an acceptance of a valid guilty plea.

Our review of the record reveals that the district court explained J.D.'s *Boykin* rights to him only during the August detention hearing related to the terroristic threatening charge. However, the district court did not specifically review these rights in the context of his decision to admit to both the terroristic threatening and assault charges the following month. In fact, J.D. had never been apprised of his *Boykin* rights in relation to either the assault or beyond control charges. Thus, there is no evidence in the record to establish that his admission to the charges was voluntary and intelligent at the time it was entered. The situation in this case is quite similar to those of *D.R.* and *Laswell,* although J.D. was represented by counsel, unlike D.R. in his case.

The record in the present case shows that under any test, the bare minimum for compliance with *Boykin* was not met. We recognize that juvenile proceedings are by nature less formal than adult proceedings; and we are aware of the great number of cases most district judges handle. However, juvenile adjudication proceedings must meet constitutional muster, and this one does not. There was no colloquy whatsoever; and from the record it appears that the juvenile's attorney responded to the district judge's questions at the adjudication. Under KRS 610.080(1), "[t]he adjudication shall determine the truth or falsity of the allegations in the petition and **shall be made on the basis of an admission or confession of the child to the court** or by the taking of evidence." (Emphasis added).

Based upon binding precedent, we must hold that the district court improperly accepted J.D.'s admission of guilt without first informing him of his *Boykin* rights at the time it accepted the plea, a step necessary to establishing that his plea was voluntary and intelligent. Accordingly, the district court should have granted J.D.'s motion to set aside the adjudication and disposition. The circuit court, in turn, committed reversible error in affirming the district court's ruling.

For the foregoing reasons, the Johnson Circuit Court's order affirming is reversed, and this matter is remanded to the Johnson District Court with directions to vacate J.D.'s adjudication and disposition, and for further proceedings in that court.

ALL CONCUR.