329 S.W.3d 360 (2010)
B.H., A Child, Appellant,
v.
COMMONWEALTH of Kentucky, Appellee.
No. 2010-CA-000259-ME.
Court of Appeals of Kentucky.
December 17, 2010.
*361 Gail Robinson, Assistant Public Advocate, Frankfort, KY, for appellant.
Jack Conway, Attorney General, Erin E. Burns, Special Assistant Attorney General, Lexington, KY, for appellee.
Before CAPERTON, MOORE, and VANMETER, Judges.

OPINION
MOORE, Judge:
B.H., a child, appeals the order of the Fayette Family Court finding that he violated KRS[1] 630.020(3), and committing him to the Cabinet for Families and Children (Cabinet) as a status offender. After a careful review of the record, we vacate the court's order because the court did not have jurisdiction over the matter; we remand with instructions for the court to dismiss the action from its docket.

I. FACTUAL AND PROCEDURAL BACKGROUND
The record in this case reveals that the complaint filed against B.H. in the present *362 case by the Court Designated Worker (CDW) alleged that B.H. was a status offender because he was a habitual truant, in violation of KRS 630.020(3). The CDW contended in the complaint that during an approximately four-month period, B.H. had "accumulated 19.64 unexcused absences and 3 unexcused tardies for [the] 2007-2008 academic school year according to the DPP [Director of Pupil Personnel] report." The CDW's Juvenile Truancy Referral Checklist that was filed the same day as the complaint stated only B.H.'s name, the school he attended, and the number of unexcused absences and unexcused tardies that B.H. had accumulated. This checklist stated "N/A," presumably for "not applicable," in regard to the following: B.H.'s history of truancy; mediation; whether a compulsory education violation had been filed on B.H.'s parent; whether B.H. had participated in any truancy intervention program; and whether a home visit, face-to-face, or telephone contact had been conducted by the DPP, a school social worker, a school counselor, or a school administrator.
Six days before filing the complaint in the family court in this action, the CDW filled out a "Preliminary Inquiry Formal/Informal Processing Criteria and Recommendations" form. That form stated that "[a] preliminary inquiry was conducted" on that day, and the people present at the inquiry were: B.H., his mother, his stepfather, and the CDW. The only other information the form contained was that B.H. had "accumulated over [eleven] unexcused days" and, based on that criteria, the CDW checked a box stating that the case was not appropriate for informal processing. Preprinted language on the form then stated that because the case was not appropriate for informal processing, it was recommended that the "case be referred to court for a formal hearing or an informal adjustment."
Five days later, a docket sheet with the court's signature was filed. Notes that were handwritten on that docket sheet stated: "IOC; appt DPA; stip to HT; VCO; CAP orders." Another handwritten note stated that a review of the case would be held several weeks later. We assume that the term "stip to HT" meant that the court found that B.H. had stipulated to the status offense charge of habitual truancy. Orders were then entered directing B.H. and his mother to submit to drug testing at the Community Alternative Program (CAP) and appointing a public defender for B.H. Additionally, a Juvenile Status Offender Order (JSOO) was entered finding B.H. to be a status offender relating to habitual truancy, pursuant to KRS 600.020(28). Preprinted language on the JSOO stated that the court found the child was subject to the court's jurisdiction pursuant to KRS 630.020. Additionally, the JSOO ordered B.H. to: obey all rules of his home; attend all school sessions on time, have no unexcused absences and no behavior problems at school; not consume, use or possess any alcoholic beverages, tobacco product or illegal drugs; submit to random drug testing; and comply with drug testing orders.
Following the next in-court review, B.H. was ordered to enroll and participate in summer school, and he was referred to the Truancy Assessment Center (TAC). He was also ordered to cooperate with TAC and follow TAC's recommendations. A TAC Assessment and Recommendation report was filed concerning B.H., stating that he had accumulated a total of thirty-four unexcused absences, three tardies and two days suspended for the 2007-08 school year. B.H. had been suspended on those two occasions for skipping class and disruptive behavior. However, the report stated that since his last court review a little over a month before the report date, *363 B.H. had accumulated zero absences, two unexcused tardies and four days suspended (due to disobeying staff and using profanity or vulgarity). The TAC report also provided that B.H. was failing six of his seven classes in high school. It reported that, according to his mother, B.H. had been diagnosed with depression, anger and anxiety, as well as "Crohn's disease (causes inflammation of the digestive tract) and Costochondritis (causes chest pain)." The TAC recommendations were for B.H. to attend and participate in summer school and complete twenty hours of community service.
At a later court review, the court ordered that B.H. not be withdrawn from school; that he "file for homebound" if his doctor thought it was necessary; and that B.H. bring his grades and "point sheet" to his next court appearance.
Subsequently, B.H. was placed on Cabinet supervision; the family court entered an order granting temporary custody of B.H. to his grandmother; B.H. was ordered to continue to work with the Cabinet and diversion,[2] and to have "no UA/UT/Behavior," which we assume means that he was to have no unexcused absences, unexcused tardies, or behavioral problems at school. The court also entered an order allowing B.H. to withdraw from school to pursue his GED.
A predispositional report was later prepared and filed by the Cabinet. In it, the Cabinet noted that B.H. had "made little effort and no progress in working toward or obtaining his GED," and that "Diversion and Impact Services have exhausted their efforts to assist"[3] B.H. The report stated that "IMPACT plus [was] the fourth consecutive in-home intervention for [the] family," and that "IMPACT ha[d] made the decision to exit services with [the] family due to the lack of progress and the high level of noncompliance with both [B.H. and his custodial grandmother]." The Cabinet's report recommended:
1. [B.H.] be drug dropped today to identify any type of drug use and if results are positive:
A. [B.H.] be assessed by the Ridge for possible drug treatment and follow all recommendations.
B. [B.H.] remain in the custody of his guardian, [his grandmother].
2. [B.H.] be drug dropped today to identify any type of drug use and if results are negative:
A. [B.H.] be given FCO's[4] by the court.
B. [B.H.] remain in the custody of his guardian, [his grandmother].
The family court reviewed the Cabinet's report and adopted its recommendations as orders of the court.
The Cabinet prepared another predispositional report prior to a subsequent court hearing. The Cabinet reported, inter alia, that B.H. had "made little effort and no progress in working toward or obtaining his GED" and that B.H. had "failed to follow through with orders of the court." The report's recommendations were for B.H. to be committed to the Cabinet as a status offender with the following court orders[:]
1. [B.H.] cooperate with placement.

*364 2. [B.H.] will follow recommendations of service providers.
3. Family will cooperate with [the Cabinet, including] monthly home visits and case planning.
4. Family will follow recommendations of placement providers in order to ensure [B.H.'s] success in placement.
The family court then entered an order finding that B.H. had violated KRS 630.020(3). The court noted that it had received recommendations pursuant to KRS 610.100 regarding the case, that reasonable efforts had been made to prevent B.H.'s removal from the home, and that continuation in the home was "contrary to the welfare of the child or removal from the home [was] in the best interest of the child." The court adopted the recommendations set forth in the dispositional report and committed B.H. to the Cabinet as a status offender.
B.H. now appeals, contending that: (a) his due process rights were violated when the trial court assumed jurisdiction over the status offense petition despite the Commonwealth's failure to affirmatively establish compliance with the express mandates and purpose of Kentucky's Unified Juvenile Code; (b) the truancy petition must be dismissed due to the failure to comply with KRS 630.060(2) and KRS 159.140; (c) the finding of guilt must be set aside because there was no admission and no plea colloquy; and (d) the court committed reversible error by committing B.H. to the Cabinet based on violations of a JSOO.

II. ANALYSIS

A. CLAIM THAT DUE PROCESS RIGHTS WERE VIOLATED WHEN COURT ASSUMED JURISDICTION
B.H. first alleges that his due process rights were violated when the family court assumed jurisdiction over the status offense petition despite the Commonwealth's failure to affirmatively establish compliance with the express mandates and purpose of Kentucky's Unified Juvenile Code. Specifically, B.H. contends that the Commonwealth did not comply with KRS 630.050. That statute provides as follows:
Before commencing any judicial proceedings on any complaint alleging the commission of a status offense, the party or parties seeking such court action shall meet for a conference with a court-designated worker for the express purpose of determining whether or not:
(1) To refer the matter to the court by assisting in the filing of a petition under KRS 610.020;
(2) To refer the child and his family to a public or private social service agency. The court-designated worker shall make reasonable efforts to refer the child and his family to an agency before referring the matter to court; or
(3) To enter into a diversionary agreement.
B.H. acknowledges that this claim is not preserved for appellate review. However, he contends that this issue is one concerning subject matter jurisdiction. We note that "defects in subject matter jurisdiction may be raised by the parties or the court at any time and cannot be waived." Commonwealth Health Corp. v. Croslin, 920 S.W.2d 46, 47 (Ky.1996).
In the present case, we found no evidence in the record to show that the Commonwealth complied with the provisions of KRS 630.050 before commencing judicial proceedings in the family court, although B.H. apparently did begin receiving assistance from social services and working with diversion at some point. It appears that, because the statute's language requires *365 compliance before commencing any judicial proceeding, the legislature's intent was to make the requirements of KRS 630.050 a matter of subject matter jurisdiction. See T.D. v. Commonwealth, 165 S.W.3d 480, 482 (Ky.App.2005) (discussing another statute under the Unified Juvenile Code concerning status offenders, i.e., KRS 630.060, and stating that "because the language of the statute requires compliance before a complaint may be received, the legislature intended to make these requirements a matter of subject matter jurisdiction."). Therefore, the family court did not have subject matter jurisdiction over this case.

B. CLAIM REGARDING NONCOMPLIANCE WITH KRS 630.060(2) AND KRS 159.140
Alternatively, B.H. contends that the truancy petition must be dismissed due to the Commonwealth's failure to comply with KRS 630.060(2) and KRS 159.140. Specifically, B.H. asserts that the truancy petition that was filed in this case contained insufficient information because it simply alleged
habitual truancy by B.H. due to unexcused absences and tardies "according to the DPP report." That report is apparently the "CDW Juvenile Truancy Referral Checklist." The form is nearly blank, basically including only B.H.'s name, high school and number of unexcused absences/tardies. The sections dealing with possible participation in a truancy intervention program, home visit, face to face or home contact are all marked "N/A" for being inapplicable. And the form is not signed. The only other document provided by the school was the "student profile attendance report" which simply listed attendance information. These documents starkly reveal the inadequacy of the school's efforts on behalf of B.H. Because the Board of Education and the CDW did not comply with KRS 630.060(2) and KRS 159.140 the finding that appellant was guilty of habitual truancy must be reversed and the charge dismissed or the case remanded to family court for further proceedings.
(B.H.'s appellate brief, p. 9) (internal citations omitted). B.H. acknowledges that this claim is not preserved for appellate review, but he contends that it is an issue of subject matter jurisdiction, which cannot be waived. See Commonwealth Health Corp., 920 S.W.2d at 47. Alternatively, he asks this Court to review this claim for palpable error under RCr[5] 10.26.
Kentucky Revised Statute 630.060(2) provides: "No complaint shall be received by the court designated worker alleging habitual truancy unless an adequate assessment of the child has been performed pursuant to KRS 159.140(1)(c), (d), and (f), unless it can be shown that the assessment could not be performed due to the child's failure to participate."
In the present case, the Commonwealth did not show that an assessment could not be performed due to B.H.'s failure to participate. Therefore, before the CDW received the complaint alleging that B.H. was a habitual truant, an adequate assessment of B.H. pursuant to KRS 159.140(1)(c), (d), and (f) was required to be performed. In pertinent part, KRS 159.140(1) provides as follows:
The director of pupil personnel, or an assistant appointed under KRS 159.080, shall:
. . . .
(c) Acquaint the school with the home conditions of a habitual truant as described in KRS 159.150(3), and the *366 home with the work and advantages of the school;
(d) Ascertain the causes of irregular attendance and truancy, through documented contact with the custodian of the student, and seek the elimination of these causes;
. . . .
(f) Attempt to visit the homes of students who are reported to be in need of books, clothing, or parental care.
The Commonwealth failed to present any evidence showing that the required assessment under KRS 159.140(1) was performed before the complaint was received by the CDW. In T.D., 165 S.W.3d at 482, this Court held that the director of pupil personnel is required to perform the goals set forth in KRS 159.140(1)(c), (d), and (f) before a complaint may be received by a CDW and before a child may be brought before the court, and that these requirements are a matter of subject matter jurisdiction. Thus, because no evidence was presented in the present case to show that the assessment was performed by the DPP before the CDW received the complaint, the CDW should not have received the complaint under KRS 630.060(2) and, according to the T.D. case, the family court should not have assumed jurisdiction over this matter because there was a lack of subject matter jurisdiction.

C. CLAIM THAT FINDING OF GUILT MUST BE SET ASIDE
Although we found, supra, that the court lacked subject matter jurisdiction over the habitual truancy petition in this case, we nevertheless will address B.H.'s remaining claims to the extent they may arise again during family court adjudications.
B.H. next asserts that the finding of guilt must be set aside because there was no admission and no plea colloquy. He alleges that counsel was appointed for him and counsel advised the court "that B.H. was willing to stipulate to habitual truancy," but "B.H. did not admit to habitual truancy nor was there a Boykin v. Alabama, 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] (1969) colloquy." B.H. acknowledges that this claim is not preserved for appellate review, but he asks this Court to review this claim for palpable error under RCr 10.26.
Kentucky Rule of Criminal Procedure 10.26 provides as follows: "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."
As applied and analyzed in J.D. v. Commonwealth, 211 S.W.3d 60, 61-62 (Ky.App. 2006),

Boykin is the seminal case in the arena of the validity of a guilty plea. In Boykin, the U.S. Supreme Court stated that "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. . . . We cannot presume a waiver of these [] important federal rights from a silent record." [Boykin,] 395 U.S. at 243, 89 S.Ct. 1709. The Supreme Court ultimately held that the trial court committed error when it "accept[ed] petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." Id. at 242, 89 S.Ct. 1709. In D.R. [v. Commonwealth, 64 S.W.3d 292 (Ky.App.2001)], this Court stated that "it [is] beyond controversy that Boykin [] applies to juvenile adjudications." 64 S.W.3d at 294, FN2. The D.R. court went on to state that:

*367 The validity of a guilty plea must be determined not from specific key words uttered at the time the plea was taken, but from considering the totality of circumstances surrounding the plea. . . . These circumstances include the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made. Id. at 294.
The Sixth Circuit Court of Appeals has also weighed in on this issue in a federal case arising out of the Western District of Kentucky, for which the juvenile had counsel. In Laswell v. Frey, 45 F.3d 1011, 1015 (6th Cir.1995), the court stated:
Upon review, this Court notes that an adjudication demands a determination of the truth or falsity of the allegations, and that a determination of the truth requires more than the simple verbal admission at the detention hearing at issue in the instant case. The Court is persuaded that, because no inquiry was made of the veracity of the charges or admission, because no inquiry was made to determine if "the plea" was voluntarily made, and because no inquiry was made as to the nature of the charges, that the proceedings cannot later be transformed from a determination of probable cause for detention into an acceptance of a valid guilty plea.
Our review of the record reveals that the district court explained J.D.'s Boykin rights to him only during the August detention hearing related to the terroristic threatening charge. However, the district court did not specifically review these rights in the context of his decision to admit to both the terroristic threatening and assault charges the following month. In fact, J.D. had never been apprised of his Boykin rights in relation to either the assault or beyond control charges. Thus, there is no evidence in the record to establish that his admission to the charges was voluntary and intelligent at the time it was entered. The situation in this case is quite similar to those of D.R. and Laswell, although J.D. was represented by counsel, unlike D.R. in his case.
The record in the present case shows that under any test, the bare minimum for compliance with Boykin was not met. We recognize that juvenile proceedings are by nature less formal than adult proceedings; and we are aware of the great number of cases most district judges handle. However, juvenile adjudication proceedings must meet constitutional muster, and this one does not. There was no colloquy whatsoever; and from the record it appears that the juvenile's attorney responded to the district judge's questions at the adjudication. Under KRS 610.080(1), "[t]he adjudication shall determine the truth or falsity of the allegations in the petition and shall be made on the basis of an admission or confession of the child to the court or by the taking of evidence." (Emphasis added).
Based upon binding precedent, we must hold that the district court improperly accepted J.D.'s admission of guilt without first informing him of his Boykin rights at the time it accepted the plea, a step necessary to establishing that his plea was voluntary and intelligent. Accordingly, the district court should have granted J.D.'s motion to set aside the adjudication and disposition. The circuit court, in turn, committed reversible error in affirming the district court's ruling.
(Underline added; internal notes omitted).
Upon reviewing the video record from the March 31, 2008 hearing, it is apparent that counsel was appointed to represent *368 B.H., and counsel then stipulated to the charge of habitual truancy. However, B.H. never personally admitted his guilt; therefore, we are not certain that he actually did admit to the status offense charged. Regardless, even if we were to assume that counsel's stipulation qualified as an admission of guilt, the court never conducted the required Boykin colloquy and counsel's stipulation to the charge, without the appropriate colloquy, does not pass constitutional muster under J.D. Nonetheless, on the same day as the hearing, the court entered a JSOO, finding B.H. was a status offender because he was a habitual truant pursuant to KRS 600.020(28), and ordering him to obey the rules of his home; attend school on time, with no unexcused absences and no behavior problems at school; not consume, use or possess any alcoholic beverages, tobacco products or illegal drugs; and submit to random drug testing.
There was no evidence that B.H. had any previous experience with the court system. Further, because the court did not conduct the required colloquy with B.H. and did not inform him of the constitutional rights he was purportedly waiving, B.H.'s guilty plea was not made knowingly and intelligently. See D.R., 64 S.W.3d at 295-96. We find this error by the family court amounts to palpable error, requiring reversal of B.H.'s guilty plea.

D. CLAIM REGARDING B.H.'S COMMISSION TO THE CABINET
Finally, B.H. alleges that the court committed reversible error by committing B.H. to the Cabinet based on violations of a JSOO. Specifically, B.H. contends that the
only consequence for violation of the order of which [he] was given notice [was] that he could be held in contempt "which could result in a fine and/or [his] being placed in secure detention or other alternative placement." KRS 630.120(1) states that any child violating a JSOO "may be subject to the provisions of KRS 630.080(4)" which deals with secure detention for contempt. B.H. was never advised at the disposition hearing or thereafter that he faced possible commitment to the Cabinet if he violated the JSOO and commitment was thus not an option for the court.
Again, B.H. acknowledges that this claim was not preserved for appellate review, but he asks us to review it for palpable error under RCr 10.26.
B.H. admits in his brief that the court informed him he "could be held in contempt `which could result in a fine and/or [his] being placed in secure detention or other alternative placement.'" (Emphasis added). Therefore, because he was warned that he could be placed somewhere else if he was held in contempt, he was given notice of the consequences for violating the court's order. However, our review of this issue is futile because, as discussed supra, the family court did not have subject matter jurisdiction over the habitual truancy petition from the start. Moreover, even if the court had subject matter jurisdiction, B.H.'s guilty plea would have to be reversed because it was not entered voluntarily and intelligently and, thus, the JSOO was an invalid court order and B.H. could not be held in contempt for violating an order that was not valid.
Accordingly, the order of the Fayette Family Court is vacated, and the case is remanded with instructions for the court to dismiss the action from its docket.
ALL CONCUR.
NOTES
[1] Kentucky Revised Statute(s).
[2] This was the first indication in the record that B.H. was working with diversion.
[3] This was the first indication in the record that B.H. had been receiving any social services assistance.
[4] No explanation was provided for what "FCO" means.
[5] Kentucky Rule(s) of Criminal Procedure.