**J.S., a Child under the Age of Eighteen, Appellant**

**v.**

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2016-CA-001598-ME**

Court of Appeals of Kentucky.

SEPTEMBER 15, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Renee Sara Vanderwallbake, Frankfort, Kentucky.

BRIEF FOR APPELLEES: Justin Criswell, Grayson, Kentucky.

BEFORE: COMBS, JOHNSON AND D. LAMBERT, JUDGES.

## OPINION

LAMBERT, D., JUDGE:

This appeal was brought on behalf of John,[1] an individual charged with the status offense of being beyond the control of school when he was under the age of 18. He reached age 18 during the pendency of this appeal, and this panel determined that because the error of which he complains is likely to be repeated, it fits the exception to the mootness doctrine. We issue this ruling pursuant to *Courier–Journal and Louisville Times Co. v. Meigs*, 646 S.W.2d 724 (Ky. 1983) (citing *Southern Pacific Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 31 S.Ct. 279, 55

L.Ed. 310 (1911)), rather than dismiss the appeal as moot.

John asserts that the trial court improperly exercised subject matter jurisdiction in his case due to a failure of the Court Designated Worker ("CDW") to follow pre-trial procedure for status offenses. After careful review of the record, we agree that the record reflects a failure by the CDW to follow proper procedure to confer the court with subject matter jurisdiction. Accordingly, we vacate the Carter Family Court's order finding John to be a status offender.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 21, 2015, on the first day of his junior year of high school, John got into trouble for being disrespectful and defiant with his teacher, and walking out of class. By October 6, 2015, this behavior had apparently become a regular occurrence, prompting the school to prepare an affidavit and a "Beyond Control of School" evaluation form, noting his behavioral and attendance issues. These documents were submitted to the CDW. After a meeting with John and his father on October 20, 2015, the CDW determined John to be an appropriate candidate for informal processing, and they entered into a pre-trial diversion agreement. This decision was reflected in a Preliminary Inquiry Form, prepared that day.

The CDW notified the Carter County Attorney on April 13, 2016, that John's diversion had been unsuccessful, following John's failure to appear at a diversion review meeting. A referral to the Carter County Attorney from the Family Accountability, Intervention, and Response ("FAIR") Team was made on April 22,

---

**1.** Both the Appellant's and Appellee's briefs referred to J.S. by the pseudonym, "John." This opinion will do the same, for the sake of consistency.

2016. This was the first indication in the record of the involvement of the FAIR Team in this matter. The petition was filed on April 29, 2016.

John's arraignment took place on May 17, 2016. During the arraignment, Jack Lowe, the Director of Pupil Personnel for Carter County Schools, offered unsworn testimony that John had 44 unexcused absences and had not attended school in over two weeks. Additionally, John needed to take the mandatory state testing he had missed during his absence, or else the school would face detrimental consequences. The Carter Family Court entered a Juvenile Status Offender order following arraignment which imposed a special condition restricting John from obtaining a driver's license or learner's permit, and providing that violation of the conditions of the order would result in removal of the child from his home. The court also issued a separate order temporarily placing John in foster care until he completed the testing.

John moved to dismiss the petition on May 31, 2016, arguing that the statutory prerequisites for subject matter jurisdiction had not been met. Specifically, he argued that the CDW had failed to impose any graduated sanctions for any alleged violations of the diversion agreement, and failed to refer the matter to the FAIR Team prior to referring the matter to the county attorney. The Commonwealth filed a response requesting a continuance and a show cause hearing, noting that the CDW had not provided any information to dispute John's arguments. The trial court granted the Commonwealth's motion, and ordered the CDW and her regional director to show good cause why contempt should not be imposed for their failure to provide the Commonwealth with the necessary documents. The trial court denied

John's motion at his next court appearance without making any findings in support.

John renewed the motion to dismiss immediately before the final adjudication hearing. The trial court again denied the motion. John then entered a conditional guilty plea, reserving the right to the instant appeal. The trial court ordered that John be returned to the custody of his father, but also that John continue to attend Ashland Day Treatment, rather than returning to his former high school.

## II. ANALYSIS

John's primary argument on appeal is that the trial court lacked subject matter jurisdiction in his case due to the failure of the CDW to observe proper procedures mandated by statute and the Juvenile Court Rules of Practice and Procedure ("JCRPP"). Indeed, this Court has previously held that non-compliance with the pre-trial procedures related to juvenile status offenders deprives the trial court of subject matter jurisdiction. *B.H. v. Commonwealth*, 329 S.W.3d 360 (Ky. App. 2010); *T.D. v. Commonwealth*, 165 S.W.3d 480, 482 (Ky. App. 2005) ("[W]e believe because the language of the statute requires compliance before a complaint may be received, the legislature intended to make these requirements a matter of subject matter jurisdiction.").

The General Assembly substantially revised the Kentucky Unified Juvenile Code (Kentucky Revised Statutes (KRS) Chapters 600-645) in 2014, and the Supreme Court adjusted the JCRPP accordingly. The legislature provided that "[u]pon the completion of the preliminary intake review, the court-designated worker may: [...] conduct a formal conference and enter into a diversion agreement" with juveniles charged with eligible status offenses. KRS 610.030(6)(d). The legislature also authorized CDWs to impose graduated sanc-

tions in response to a violation of the terms of such agreements. KRS 610.030(8)(b)(4). Finally, and most importantly to this matter, the legislature mandated the referral of juveniles to the FAIR Team in the event of a failure to complete a diversion agreement. KRS 610.030(9)(b)(2).

The clear purpose of these changes is to create two layers of assistance before bringing the weight of criminal justice system to bear on children for status offenses. Anything short of compliance with these provisions frustrates the purpose of the clear legislative intent.

### 1. THE CDW WAS NOT REQUIRED TO IMPOSE GRADUATED SANCTIONS PRIOR TO TERMINATING JOHN'S DIVERSION

In the instant case, there is no evidence of record that the CDW ever imposed graduated sanctions for violations. In fact, the first instance in the record of any violations of the diversion agreement is on April 13, 2016, when John failed to appear for a diversion agreement review. The Commonwealth contends that the imposition of graduated sanctions by a CDW is permissive rather than mandatory.

While the legislature used permissive language in authorizing CDWs to impose sanctions,[2] it has long been held that the word "may" can be interpreted to describe compulsory rather than permissive actions in the entire context of a provision's language. *City of Middlesboro v. Terrell*, 259 Ky. 47, 81 S.W.2d 865 (1934). In context, the provision authorizing CDWs to impose graduated sanctions in public offense cases also uses the word, "may," but JCRPP 18 requires graduated sanctions, even requir-

ing their exhaustion prior to imposition of commitment of the child. However, given that the dispositional portion of JCRPP 4 lacks any parallel to the sister provision in JCRPP 18, we cannot agree that the imposition of graduated sanctions is mandatory. We interpret the language with its literal meaning, and determine that the imposition of graduated sanctions is permissive.

### 2. THE CDW WAS REQUIRED TO REFER THE MATTER TO THE FAIR TEAM PRIOR TO REFERRING IT TO THE COUNTY ATTORNEY

The Commonwealth asserted in its brief that the CDW referred the matter to the FAIR Team on April 15, 2016. The record is absent any information regarding the FAIR Team's involvement prior to the FAIR Team's own referral of the case to the county attorney on April 22, 2016. Assuming the April 15th date is accurate, the FAIR Team still had little time to carry out its statutory duties before the petition was filed. Further, Rule 4D of the JCRPP requires that no petition shall be filed in a diversion case unless "the case is referred to the county attorney *by the FAIR team*[.]" JCRPP 4D(3)(a) (emphasis added). The record clearly indicates that the CDW referred the matter to the county attorney days before the referral to the FAIR Team.

Additionally, the FAIR Team's referral of the matter to the county attorney took place before any effort was made to provide the services for which the FAIR Team was created. The FAIR Team's written referral to the county attorney indicates a number of John's violations of the diversion agreement, ranging in severity from failing to write a letter of apology to

---

**2.** KRS 605.030(1)(m) provides that "A court-designated worker may [...] (m) Impose graduated sanctions, from least restrictive to

most restrictive, in response to violations of the terms of a diversion agreement[.]"

his alleged use of marijuana. The FAIR Team's knowledge of those allegations came from its review of the CDW's activity. The CDW knew the case management plan was not effective, and that John might benefit from an enhanced plan, but instead of imposing any graduated sanctions or making a referral when that ineffectiveness became clear, the CDW instead waited until only a few days before the diversion agreement was set to expire to make the referral.

In this instance, it also appears the FAIR Team had little opportunity to effectuate its purpose of developing enhanced case management plans and opportunities (KRS 605.035(1)), and was relegated merely to act as a rubber stamp for the CDW's decision to terminate John's diversion. John had no opportunity while still on diversion to benefit from enhanced case management or additional services. These actions further reflect a lack of good faith compliance with the procedural rules set by the legislature and the Supreme Court on the part of the CDW.

### III.  CONCLUSION

The CDW committed a critical failure in this case. While we do not hold that the imposition of graduated sanctions in a status offender case is mandatory, the CDW nonetheless failed to carry out a mandatory duty to refer the matter to the FAIR Team prior to referring the case for prosecution. The result of this failure is to deprive John of the benefit of any services available to assist him and the trial court of subject matter jurisdiction. For this reason, we must vacate the trial court's order adjudicating John to be a status offender.

ALL CONCUR.