324 S.W.3d 438 (2010)
N.K., a minor, Appellant,
v.
COMMONWEALTH of Kentucky, Appellee.
No. 2010-CA-000041-ME.
Court of Appeals of Kentucky.
October 15, 2010.
*439 Gail Robinson, Assistant Public Advocate, Dept. of Public Advocacy, Frankfort, KY, for appellant.
Jack Conway, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.
Before KELLER and THOMPSON, Judges; HARRIS,[1] Senior Judge.

OPINION
THOMPSON, Judge:
N.K., a minor, appeals from orders of the Carter Family Court finding him a habitual truant, in contempt of court and committing him to the Cabinet for Families and Children. Because the truancy complaint did not comply with KRS 630.060(2) and KRS 159.140, we vacate the orders. We also believe it necessary to resolve an issue relating to N.K.'s admission to habitual truancy and the implication of the child's right to be advised of his constitutional rights.
A status offense complaint was filed against N.K. alleging that he was a habitual truant. Attached to the complaint were school attendance records and a student profile that indicated N.K. had more than eleven unexcused absences.
N.K. appeared at his arraignment and counsel was appointed. The director of pupil personnel was present at the arraignment and informed the court that *440 although he attempted two home visits, no one was home on either occasion. The court then advised N.K.'s appointed counsel to discuss with N.K. whether he was willing to admit that he was a habitual truant. After a brief discussion among N.K., N.K.'s mother, and counsel, counsel returned to the bench and stated, "I spoke with [N.K.] and his mother, and [N.K.] is willing to admit to a habitual truant." However, N.K. neither admitted to habitual truancy nor was there a Boykin colloquy.
The family court then informed N.K. that he would be subject to the court's order that required him to attend school, not leave school without permission, obey all rules at home, and use no alcohol or tobacco. A disposition hearing was scheduled for July 24, 2008. N.K. and his sister, also determined to be a habitual truant, appeared at the disposition hearing at which the prosecutor stated that N.K. had repeated school absences since the last court date. A contempt hearing was scheduled for July 31.
N.K. appeared at the contempt hearing where an agreement was reached that N.K. and his older sister would receive five-days' detention until the end of the year and would be required to ride the school bus. After defense counsel confirmed the agreement, the court entered an order in conformity with its terms. At subsequent review hearings, it was reported that N.K. had complied with the court's order. At the final review on December 18, 2008, the court granted the prosecutor's request to remove N.K.'s case from the active docket.
The case remained off the active docket until November 2009, when a second truancy complaint was filed alleging that N.K. had eight unexcused school absences and three unexcused tardies. No further allegations were made. N.K. and his counsel did not appear at the initial hearing. However, the court merged the new complaint with the first and scheduled a show cause hearing for December 10, 2009.
N.K. and his counsel appeared at the show cause hearing. The Commonwealth reported that N.K. had thirty-seven unexcused absences since the beginning of the 2009-2010 school year. N.K.'s counsel requested a formal hearing because he had received only the show cause motion and had not been served with the second complaint and was unable to prepare a defense. The court refused his request stating that it was a simple case and, within minutes, commenced the hearing. Counsel stated that N.K. did not contest the absences but attributed the absences to chronic back pain that he suffered as a result of an automobile accident. Summarily, the family court rejected N.K.'s excuses and found N.K. in contempt and committed him to the Cabinet.
Having recited the factual and procedural history of the case, we now turn to the issue regarding compliance with the statutes applicable to truancy actions. Although not preserved, in T.D. v. Commonwealth, 165 S.W.3d 480 (Ky.App.2005), the Court held it is a matter of subject matter jurisdiction that cannot be waived. N.K. alleges that the truancy complaint must be dismissed because it did not comply with KRS 630.060(2) and KRS 159.140. The Commonwealth counters that dismissal is not required, but that should this Court conclude that the complaint was inadequate, remand is appropriate to permit the family court to conduct a hearing and render findings of fact regarding whether the statutory requirements were met. We begin our analysis with a review of the applicable statutes.
KRS 630.060(2) states:
No complaint shall be received by the court designated worker alleging habitual *441 truancy unless an adequate assessment of the child has been performed pursuant to KRS 159.140(1)(c), (d), and (f), unless it can be shown that the assessment could not be performed due to the child's failure to participate.
Although the status offense of habitual truancy is not a criminal matter, it can have severe consequences for the child if the attendance terms are not met, including possible probation and detention. Thus, the legislature has imposed upon the director of personnel the duties set forth in KRS 159.140(1) as follows:
(c) Acquaint the school with the home conditions of a habitual truant as described in KRS 159.150(3), and the home with the work and advantages of the school;
(d) Ascertain the causes of irregular attendance and truancy, through documented contact with the custodian of the student, and seek the elimination of these causes;
(f) Attempt to visit the homes of students who are reported to be in need of books, clothing, or parental care....
This Court addressed the application of KRS 630.060(2) and KRS 159.140(1) in T.D., 165 S.W.3d 480, where we held that the director's duties are mandatory and must be met as a prerequisite to bringing a child before the court as a habitual truant. "[B]ecause the language of the statute requires compliance before a complaint may be received, the legislature intended to make these requirements a matter of subject matter jurisdiction." Id. at 482. Although the director's duties may be burdensome, it was the intention of the legislature to make it "more rigorous" to resort to the court for intervention into a truancy matter. Id. The court observed that inevitably there are instances where, regardless of the efforts of the director of personnel, home visits are impossible and the ability to ascertain the causes of truancy are frustrated by a lack of cooperation by the student, parent, or guardian. If so, it is the duty of the court designated worker to determine if an adequate assessment has been performed. Id.
Despite the unambiguous language in the applicable statutes as interpreted in T.D., the complaint filed in this case was woefully inadequate. The "assessment" section required that the dates of visits to the home be stated and the conditions of the home be described. Yet, the Carter County School merely stated "Home visit 3/14/08." The assessment section also required that the "causes of irregular attendance, efforts to eliminate these areas, the service plan implemented, the date services were attempted, and reasons for the failure of such service" be listed. In response, the Carter County School only stated that eight absences were excused and "11-65 Days" were unexcused without further detail.
This Court is aware that KRS 159.140(1)(f) was amended after the court's decision in T.D. and now provides that the director "attempt to" visit the home of a student who is absent from school if the student is "reported to be in need of books, clothing, or parental care[.]" However, the General Assembly left unaltered KRS 630.060(2), which specifically controls in truancy matters and contains the mandatory directive that an adequate assessment of the child be performed pursuant to KRS 159.140(1)(c), (d), and (f). Thus, the requirement that the director visit the student's home and be acquainted with the home's conditions prior to filing a truancy complaint was left intact.
The Commonwealth contends that even if the complaint is inadequate, this Court should remedy the flaw by remanding the case for a hearing for the family *442 court to render findings regarding compliance with the statutes. Even if we accepted the Commonwealth's contention that the deficient complaint can be cured by evidence submitted after its filing, we cannot ignore the salient evidence that: (1) the director did not acquaint the school with the home conditions of the student; (2) the director did not acquaint the home with the work and advantages of the school; (3) the director did not determine the cause of the truancy through documented contact with the student's custodian; and (4) the director did not seek elimination of the causes for truancy. Thus, we conclude that the truancy complaint should not have been received by the court designated worker and, as a consequence, the orders adjudging N.K. as a habitual truant and the order finding N.K. in contempt are vacated.
Although N.K.'s remaining arguments are rendered moot by our decision, we are disturbed by the procedural posture of this case and, as urged by the Commonwealth, conclude that the issue regarding the validity of N.K.'s admission is one that warrants discussion and clarification for future truancy adjudications. As the Commonwealth noted in its brief: "[A] troubling practice was followed by the Public Advocate, that unfortunately is recurring in family court cases...." We agree.
We stress that habitual truancy is a status offense and the proceeding is not criminal. Nevertheless, it is a judicial proceeding against a child relating to the fault of the child with possible severe consequences. As a result, the criminal protections provided by the constitution apply. T.D., 165 S.W.3d at 483.
A basic premise of constitutional law is that an admission of guilt for which the state may impose punishment must be freely, voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The court is required to put forth the "utmost solicitude" in "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id., 395 U.S. at 243-44, 89 S.Ct. at 1712-13. Because the entry of a guilty plea or an admission to habitual truancy waives certain constitutional rights, the waiver of those rights cannot be presumed from a silent record. Hartsock v. Commonwealth, 505 S.W.2d 172 (Ky. 1974).
The initial error in this case is that N.K. did not enter an admission to habitual truancy. The admission consisted solely of counsel stating that N.K. is "willing" to admit to being a habitual truant. The error was perpetuated when the family court failed to question N.K. if that was his admission and failed to advise N.K. of the potential consequences of the admission and question him to determine if he understood the consequences of his plea. Our conclusion reached in J.D. v. Commonwealth, 211 S.W.3d 60, 63 (Ky.App.2006), applies equally to habitual truancy proceedings:
We recognize that juvenile proceedings are by nature less formal than adult proceedings; and we are aware of the great number of cases most district judges handle. However, juvenile adjudication proceedings must meet constitutional muster, and this one does not. There was no colloquy whatsoever; and from the record it appears that the juvenile's attorney responded to the district judge's questions at the adjudication.
We hold that an admission to habitual truancy must be entered by the child, not *443 by counsel. It is further held that the court is required to inform the child of his Boykin rights at the time it accepts the admission.
Based on the foregoing, the orders of the Carter Family Court adjudging N.K. a habitual truant and finding him in contempt and committing him to the Cabinet are vacated.
ALL CONCUR.
NOTES
[1] Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.