**D.G., a child under 18, Appellant,**

**v.**

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 2011–CA–000298–ME.**

Court of Appeals of Kentucky.

Nov. 18, 2011.

---

Dawn Fesmier, Frankfort, KY, for appellant.

Libby G. Messer, Lexington, KY, for appellee.

Before COMBS, MOORE, and NICKELL, Judges.

## OPINION

COMBS, Judge:

D.G., a juvenile, appeals the dispositional order of the Fayette Family Court that found him in contempt as well as adjudicating the underlying juvenile status offender order. After our review, we vacate both orders.

Throughout the proceedings at issue, D.G. was fourteen years of age. His mother filed a petition in August 2010 charging that D.G. was beyond her control. At the arraignment on August 26, the court and D.G.'s parents agreed to allow D.G. to live with his father. On September 9, 2010, D.G. appeared in court for a pre-trial conference. His father reported that D.G. was doing well in his home. The court asked if there were any stipulations, and D.G.'s counsel answered in the affirmative. The court replied, "I'm going to set your stipulation on the beyond control charge."

At the disposition on September 30, D.G.'s father reported that D.G.'s attitude had improved and that he was doing well in school. However, on November 18, 2010, the court held a hearing relating to a contempt of court charge. D.G.'s school reported that he was behaving badly and was not doing any of his work. D.G. and his father had engaged in an altercation which resulted in an assault charge against the father. Because of a no-contact order, D.G. was temporarily residing with relatives. However, the relatives were unwilling to continue the living arrangement due to D.G.'s aggressive behavior and his refusal to obey rules. At that point, the court referred D.G. to the Detention Alternative Coordinator (a "DAC referral") to find him a foster home. Until he was placed in that foster home, D.G. was housed in a detention center.

D.G. returned to court on December 9, 2010, for the pre-trial conference on the contempt charge. His counsel informed the court that D.G. wished to enter a guilty plea. The court accepted the plea by saying, "OK, so there's a stipulation to the contempt charge. [D.], what's your birthday?" The Cabinet of Health and Family Services reported to the court that D.G. was improving and making progress in his foster home. It recommended that he be committed to the Cabinet so that he could remain in the foster home and receive additional therapy. A mental health facility had performed an assessment of D.G. and had recommended out-patient treatment rather than residential treatment. D.G. had no relatives who were willing to accept him into their homes.

The disposition for the contempt charge was held on January 13, 2011. D.G.'s counsel argued that this matter should be treated as a dependency case because D.G. did not have any relatives who were willing to allow him into their homes. The Cabinet responded by stating that D.G. had created the situation by being a status offender and asked that he be committed to the Cabinet as a punitive measure. The court followed the Cabinet's recommendation and committed D.G. This appeal follows.

■ D.G.'s first contention is that the trial court improperly accepted his admission of guilt. We agree.

■ As a threshold matter, D.G. acknowledges that the error was not preserved and asks us to examine the issue for palpable error pursuant to Kentucky Rule[s] of Criminal Procedure (RCr) 10.26. The rule defines palpable error as one that has so affected the substantial rights of a party as to result in manifest injustice. A palpable error is one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky. 1997). Since an improperly entered guilty plea certainly implicates manifest injustice, we will examine the merits of the issue.

Kentucky Revised Statute[s] (KRS) 610.010(11) authorizes the court to hold "a child in contempt of court to enforce *valid court orders* previously issued by the court[.]" (Emphasis added). KRS 600.020(61)(d) defines a valid court order in part as being one issued to a child "[w]ho received, before the issuance of the order, the full due process rights guaranteed by the Constitution of the United States."

■ In order to satisfy due process, a guilty plea:

> must represent a voluntary and intelligent choice among the alternative course [*sic*] of action open to the defendant.... The court *must question the accused* to determine that he has *a full understanding of what the plea connotes and of its consequences*, and this determination should become part of the record. (Emphasis added.)

*Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky.App.1990) (citations omitted). Courts ensure that the defendants' pleas are voluntary by engaging in "an affirmative showing, on the record, that a guilty plea is voluntary and intelligent." *Boykin v. Alabama*, 395 U.S. 238, 241–42, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). This discussion between the court and the defendant is intended to establish that the defendant has a clear mind, understands his other options, comprehends the waiver of his rights, and is satisfied with the representation provided by his counsel.

■ Upon review, an appellate court must examine the totality of the circumstances surrounding the plea. *Centers, supra.* (citations omitted). In addition to the colloquy, those circumstances include the defendant's demeanor, background, age, and experience. *D.R. v. Commonwealth*, 64 S.W.3d 292, 294 (Ky.App.2001).

■ Our courts have acknowledged that because of their minority status, children should be granted a heightened assurance of the protection of their constitutional rights within the justice system. *Humphrey v. Commonwealth*, 153 S.W.3d 854, 858–59 (Ky.App.2004). Guilty pleas are of special concern because they inherently include the waiver of several constitutional rights. *D.R., supra.* Therefore, a trial court may not accept a guilty plea from a juvenile without informing the juvenile of the rights that he is waiving. *Kozak v. Commonwealth*, 279 S.W.3d 129, 134 (Ky. 2008). The *Boykin* colloquy must occur at the time that the court accepts the juvenile's admission. *N.K. v. Commonwealth*, 324 S.W.3d 438, 443 (Ky.App.2010). This court has vacated a juvenile's admission of guilt because of the failure of a trial court to fully explain the consequences of an admission prior to accepting it. *D.R., supra.*

In this case, the court did not engage D.G. in any sort of meaningful discussion concerning the consequences of his plea; nor did it determine or assure whether he made it voluntarily. At D.G.'s arraignment in August, the court explained to

D.G. that if he did not behave better, detention would be a possible outcome. Any other consequences of the plea were never mentioned again—most notably at the time that D.G. entered it. In fact, his admission of guilt was made by his counsel, who merely said, "yes" when the court asked if any stipulations were being made.

There is no evidence that D.G.'s plea was voluntary, knowing, and intelligent. The court did not ask *him* about his state of mind or if anyone had pressured him to make the plea. It did not explain to D.G. that he had the option of pleading not guilty and thus becoming entitled to a hearing. It did not ascertain whether he was aware of the constitutional rights that he waived as a result of his admission. Therefore, we must vacate the order designating D.G. as a status offender.

■ D.G.'s second argument is that the court erred when it committed D.G. to the Cabinet. Since we are vacating the finding that D.G. is a juvenile status offender, that argument is moot. However, because there is a likelihood that the issue will arise again, we will address it.

KRS 600.010(2)(c) provides that "the court shall show that other less restrictive alternatives have been attempted or are not feasible in order to insure that children are not removed from families except when absolutely necessary[.]" D.G. argues that the court did not fully explore alternatives to commitment. We disagree.

At D.G.'s arraignment, the Cabinet explained that it had attempted to involve the family in a Diversion program. That program would have allowed D.G. to remain at home, and the entire family would have participated in his rehabilitation. However, the social worker who went to the home was unable to complete the assessment of the mother because D.G. himself was too disruptive. The social worker reported feeling threatened and even con-

templated calling the police. Therefore, Diversion was duly attempted but could not be implemented.

The court then allowed D.G. to live with his father. That arrangement was also unsuccessful. A relative tried to let D.G. stay in her home, but he refused to follow rules. The relative said that she could not handle him and was unwilling to continue.

D.G. asserts that another relative has expressed willingness to allow trial visits on weekends with him. However, he would still have to live somewhere during the week. The court recognized that D.G. has made progress in his foster home and that he had to be committed to the Cabinet in order to remain there. We hold that the commitment was wholly proper. Therefore, we would have affirmed on that issue if the underlying offense had been affirmed. However, because D.G.'s guilty plea was not properly entered, both the finding of contempt and the resulting punishment are improper.

We vacate the contempt order and the order designating D.G. to be a status offender because of the absence of an adequate *Boykin* colloquy; we remand for additional proceedings consistent with this opinion.

ALL CONCUR.