**J.L.C., a Child Under Eighteen; A.M.V., a Child Under Eighteen; and V.B., a Child Under Eighteen, Appellants**

**v.**

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2015–CA–000320–ME; NO. 2015–CA–000463–ME; AND NO. 2015–CA–000756–ME**

Court of Appeals of Kentucky.

RENDERED: APRIL 1, 2016; 10:00 A.M.

MODIFIED: APRIL 22, 2016

MODIFIED: MAY 20, 2016

Brief for Appellants: Renee Vanden-wallbake, Assistant Public Advocate, Frankfort, Kentucky

Brief for Appellee: Jack Conway, Attorney General of Kentucky, Frankfort, Kentucky, Candice Jo Hobbs, Assistant Shelby County Attorney, Shelbyville, Kentucky

BEFORE: KRAMER, D. LAMBERT, AND STUMBO, JUDGES.

*OPINION*

KRAMER, JUDGE:

J.L.C., A.M.V., and V.B., all children under eighteen years of age, appeal the Shelby Family Court's final dispositions in their cases wherein they were found to be status offenders (*i.e.,* habitual truants). After a careful review of the records, we vacate the family court's orders adjudging them to be habitual truants because the family court did not have subject matter jurisdiction over the three juveniles' cases.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. V.B., APPEAL NUMBER 2015–CA–000756–ME

A complaint was filed against V.B., a sixteen-year-old female child, alleging that

she was a habitual truant in violation of KRS[1] 630.020(3) because she had accumulated 25.50 unexcused absences and 3.0 tardies between August 19, 2014 and October 27, 2014. The Court Designated Worker (CDW) filed an "unsuccessful diversion agreement," which stated that V.B. had missed several days of school with unexcused absences even after she had signed a diversion agreement.

An Affidavit and Truancy Evaluation Form was filed with the complaint, which stated that V.B.'s siblings had past attendance issues, but that her siblings had not been referred for truancy.[2] Much of the form is blank. As for home conditions, the report merely stated: "No visible barriers to attendance." As for the cause(s) of irregular attendance and truancy, the information provided was as follows: "Father states that mom has been in the hospital. Student was supposed to return to school on 10/13/14, with medical notes for absences, but did not." The section of the form pertaining to the agencies that were involved was left blank. Regarding the interventions made by the local school, the sub-sections on telephone calls, student conferences, referral to Youth Services Coordinator/Family Resource Youth Services Coordinator, and referral to other agencies were left blank, but the sub-sections on letters sent, parent conferences, home visits, and "other" had information provided. Specifically, those sub-sections stated that letters were sent on September 18, 2014 and September 26, 2014; parent conferences and home visits occurred on both October 1, 2014 and October 10, 2014; and the student was referred to the CDW in December 2013 for truancy issues.

V.B.'s attendance report dated October 21, 2014, which was attached to the Affidavit and Truancy Evaluation Form, stated that she had accumulated 25.50 unexcused absences and 3 unexcused tardies. Her behavior report provided that when a home visit was conducted to deliver the final notice letter of truancy to V.B.'s parents, the resolution details were as follows: "Final Notice Letter prepared at 9.5 unexcused absences. Letter received 10/1/14 by [V.B.'s father]. Dad said [V.B.'s] mom has been in ICU for about two weeks. No visible barriers to attendance." It also provided that the school was ready to file a complaint with the CDW on October 9, 2014, but another home visit was not conducted until the next day. The resolution details of that home visit were as follows:

> [Behavior Administration Staff Member] conducted a home visit and spoke with dad. He said [V.B.] has missed school because her mom has been in ICU, but that she will be returning to school on Monday, 10/13/14, with notes. [Behavior Administration Staff Member] explained that he would be filing truancy charges with the CDW's office unless notes to excuse the absences were presented 10/13/14.

The behavior report further stated on October 21, 2014, that an affidavit was filed with the CDW after V.B. had accumulated 25.5 unexcused absences and 3 unexcused tardies.

A subsequent attendance report was included in the record. It showed that by December 18, 2014, V.B. had accumulated 39 unexcused absences and 8 unexcused tardies.

---

1. Kentucky Revised Statute.

2. We note that it does not appear that V.B.'s academic performance report was attached, because we were unable to find it in the record before us.

A hearing was held on February 11, 2015.[3] During the hearing, V.B.'s counsel sought dismissal on the basis that the court did not have subject matter jurisdiction because the Affidavit and Truancy Evaluation Form was not sufficiently complete. The court orally denied the motion to dismiss.

Another hearing was held on February 25, 2015, during which V.B. admitted to being a habitual truant without waiving her claim that the court lacked subject matter jurisdiction. She waived a separate disposition hearing, and the court entered a Juvenile Status Offender Order (JSOO).

## B. A.M.V., APPEAL NUMBER 2015–CA–000463–ME

A complaint was filed against A.M.V., a sixteen-year-old female student, in January 2015 alleging that she was a status offender (specifically, a habitual truant) because she had accumulated 21.50 unexcused absences and 6 tardies so far that school year. A Preliminary Inquiry Formal/Informal Processing Criteria and Recommendations Form was filed, in which the CDW stated that diversion had been unsuccessful due to unexcused absences or tardies from school.

The Affidavit and Truancy Evaluation Form that was filed with the complaint stated that A.M.V. had 21.50 unexcused absences and 6 tardies. Much of this form was blank. The "school issues" section

---

3. We pause to note during our review of the hearings in this matter, defense counsel also asked that the hearing be conducted in the courtroom, rather than in chambers where the proceedings were being held at that time because counsel stated that she was concerned the record was not being adequately preserved. The court asked what gave her that impression, and counsel responded that she had been copied on an email from the court clerk the prior week stating that things were unclear on the video recordings of the proceedings held in chambers. The court stated that the hearing would continue to be held in chambers. Certainly that is the family court's prerogative; however, as is all too often the case with in-chambers hearings, the video and audio recordings of all three juveniles' cases involved in these appeals were of a less-than-desirable quality. First, the video recording device appears to have turned off and on repeatedly throughout each juvenile's hearings, often when the court or defense counsel was in mid-sentence, so that small portions of the hearings were not recorded. Second, the Shelby County Attorney, who represented the school in these cases, as well as others who spoke at the hearings, at times did not speak loudly enough for us to understand what they were saying on the recordings. These proceedings involve constitutional rights of juveniles. See T.D. v. Commonwealth, 165 S.W.3d 480, 483 (Ky.App.2005) (quoting In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)) ("Despite the non-criminal nature of juvenile proceedings, however, the United States Supreme Court has held that: A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.") Accordingly, having a properly recorded hearing is imperative for judicial review. We also note that frequently juvenile proceedings are conducted in a cursory fashion with much informality. We understand that perhaps that is to protect the child. However, when, for example, proceedings take place around a conference table and the attorney representing the Commonwealth is seated next to the judge hearing the case, we express concern that this could cause the child to question the fundamental fairness of the process. Moreover, there is a tendency, in a conference room setting around a table, for those present to speak in such a manner that the reviewing Court cannot discern who they are or for what purposes they are present. We certainly applaud a family court for attempting to create an environment that does not appear overwhelming or intimidating to the child. However, care must be shown that the environment is not so overly informal that due process, the appearance of impartiality and preservation of the proceedings do suffer.

was largely left blank, except it referred to attached reports concerning the sub-sections of "skipping school/cutting classes"; "referrals/discipline issues/suspensions"; and "academic performance." Regarding home conditions, the form stated that there were "[n]o visible barriers to attendance." As for the "interventions by local school" section, the sub-sections concerning telephone calls, "referral to Youth Services Coordinator/Family Resource Youth Services Coordinator," "referral to other agency," and "other" were left blank. However, the "interventions by local school" section did state that letters were sent on September 5, 2014, September 12, 2014, and September 26, 2014; a parent conference was held on November 4, 2014; student conferences were held on October 2, 2014, November 5, 2014, and November 12, 2014; and home visits were conducted on October 1, 2014, October 4, 2014, October 6, 2014, and November 4, 2014.

The attendance report that was attached to the Affidavit and Truancy Evaluation Form stated that A.M.V. had accumulated 23 unexcused absences and 5 unexcused tardies. Her academic performance report revealed that she had received grades of "D" or "F" in most of her classes. Her behavior report stated that she had skipped school/class twice, she had two

dress code violations, multiple tardies, and multiple truancies. The resolution comment for one of the truancy violations stated that a final notice letter was prepared once A.M.V. had 13 unexcused absences, and that a school representative "attempted a home visit three times to deliver final notice; however, mom was never there to receive it. Mailed via [United States Postal Service] 10/9/14." Another resolution comment for yet a subsequent truancy violation provided that the school representative "attempted to conduct a home visit to deliver final notice on 10/1/14, 10/4/14, and 10/6/14. Each time notice of visit was left with a request to call; however, mom did not comply." [4]

An Unsuccessful Diversion Agreement Form was also filed with the complaint in A.M.V.'s case. This form stated that since she had signed her diversion agreement, the child had accumulated 6 more unexcused absences/tardies.

A hearing was held, during which defense counsel moved to dismiss the charge for lack of subject matter jurisdiction. Counsel argued that the school had not done everything it was supposed to do before bringing the case to court. The court denied the motion. [5]

4. Because the Affidavit and Truancy Evaluation Form also stated that a home visit was made on November 4, 2014, we assume that A.M.V.'s mother complied on that date and that a home visit was completed at that time because we did not see anything in the record stating otherwise.

5. Near the end of the hearing, defense counsel politely informed the court that she was going to file a written motion to dismiss for lack of subject matter jurisdiction in an effort to preserve the claim for the record, even though the court had already orally denied her motion. We cannot know why based on the record that is before us, but the court told her not to file a written motion because if she

did, that would essentially amount to harassment of the court and counsel might be sanctioned for it. (A.M.V. video record 2/11/15 at 3:04:30; J.L.C. video record 2/18/15 at 2:11:00). Our review of the proceedings showed an advocate zealously, but respectfully, advocating for her clients. We appreciate how busy a family court is. However, written motions do serve as a benefit for completeness and for review. And, of course, as defense counsel correctly noted, she was required to preserve, on the record and at the very least orally, claims of lack of subject matter jurisdiction in each of her clients' separate cases. Making such a motion in one case has no application in separate cases.

During a subsequent hearing, defense counsel noted that the defense was not waiving the subject matter jurisdiction issue because the defense intended to raise it on appeal, but that A.M.V. would admit the charge against her, which she then did. The court entered a JSOO, in which it found that A.M.V. was a status offender—habitual truant.

## C. J.L.C., APPEAL NUMBER 2015–CA–000320–ME

A complaint was filed against J.L.C., a male child who was fifteen years old at the time, alleging that he was a status offender (*i.e.,* a habitual truant) in violation of KRS 630.020(3) because he had accumulated 16.50 unexcused absences and 7 unexcused tardies by the time the complaint was filed. A Preliminary Inquiry Formal/Informal Processing Criteria and Recommendations Form was filed with the complaint, which provided that in addition to the habitual truancy charge against J.L.C., he had been "through the CDW Informal Process on at least three (3) prior, separate occasions on a Status Offense or Non-felony Public Offense complaint." Therefore, the CDW stated on the form that the child was not appropriate for informal processing.

An Affidavit and Truancy Evaluation Form was also filed with the complaint. It reiterated the number of unexcused absences and tardies J.L.C. had accumulated since the beginning of the school year. Regarding family history, the form stated that J.L.C.'s two siblings had not had attendance issues in the past, nor were his siblings currently referred for truancy. The "family information" section of the form was left blank. The section of the form concerning school issues was partially left blank, except the sub-sections regarding "skipping school/cutting classes," "referrals/discipline issues/suspensions," "aca-demic performance," and "lack of respect for authority" referred the reader to attached documents. The "home conditions" section of the form provided: "No visible barriers to attendance." The "clothing needs" section was left blank. The "cause(s) of irregular attendance and truancy" section provided: "Father said [J.L.C.] has been sick but they just haven't turned in the notes." The "agencies involved" section was left blank. The section of the form concerning interventions by the school left the sub-sections regarding phone calls, referral to Youth Services Coordinator/Family Resource Youth Services Coordinator, and referral to another agency blank, but the sub-sections on letters sent, parent conferences, student conferences, home visits, and "other" had information provided. Specifically, those sub-sections stated that letters were sent on August 29, 2014, October 9, 2014, and November 3, 2014; parent conferences were held on November 8, 2014 and November 18, 2014; student conferences were held on September 2, 2014, September 4, 2014, September 16, 2014, September 17, 2014, October 1, 2014, October 2, 2014, October 8, 2014, November 6, 2014, and November 12, 2014; home visits were conducted on November 8, 2014 and November 18, 2014; the student was previously court-ordered to attend school; and an affidavit was filed for violation of the court order on November 4, 2014.

The attendance report that was attached to the Affidavit and Truancy Evaluation Form revealed that J.L.C. had accumulated 16.50 unexcused absences and 7 unexcused tardies that school year (as of November 19, 2014). His academic performance report that was attached revealed that he was failing all of his classes. J.L.C.'s behavior report provided that he had twice been in possession of and using tobacco while at school; he had disrupted class several times; he had disrespected

others and a teacher; he had defied faculty/staff; he had skipped school/class; he had been tardy to school or class multiple times; and he had been sent multiple truancy letters, including a final notice letter. The resolution comments for the final notice letter stated that J.L.C.'s father responded that the child had "been sick but they just [had not] turned in the notes. No visible barriers to attendance."

A subsequent attendance report dated February 3, 2015, was also in the record. It revealed that as of that date, J.L.C. had accumulated 35.50 unexcused absences and 13 unexcused tardies. An academic performance report from that same date stated that J.L.C. was still failing all of his classes.

In early February 2015, a hearing was held, during which defense counsel moved to dismiss the charge on the basis that the family court lacked subject matter jurisdiction because the school failed to document the strategies it took before sending the case to court. The court orally denied the motion. During a subsequent hearing, defense counsel reiterated its argument that she did not believe the court had subject matter jurisdiction in this case under KRS 159.140 and KRS 630.020 because the school had not followed the jurisdictional requirements to bring this claim against J.L.C. Defense counsel then stated that although the defense was not waiving subject matter jurisdiction, J.L.C. would admit to the charge, and the child did so later in the hearing. The defense waived a separate disposition. The court entered a JSOO stating that it had found J.L.C. to be a status offender—habitual truant. In the JSOO, the court ordered J.L.C. to: not leave his home without custodial permission; obey all rules of his home, including a curfew which was to be set by his parents; attend all school sessions on time; have no unexcused absences and no behavior problems at school; violate no law; maintain at least passing grades in school; and not consume, use or possess any alcoholic beverages, tobacco products or illegal drugs. This order was to remain in effect for one year.

All three children now appeal the family court's decisions in their cases. They allege that the family court lacked subject matter jurisdiction over their cases due to the failure of their schools to document compliance with KRS 159.140. Their cases have been consolidated for consideration on appeal.

## II. ANALYSIS

"Although the status offense of habitual truancy is not a criminal matter, it can have severe consequences for the child if the attendance terms are not met, including possible probation and detention. Thus, the legislature has imposed upon the director of personnel [statutory duties prior to initiating a complaint in court]...." *N.K. v. Commonwealth,* 324 S.W.3d 438 (Ky.App.2010). Pursuant to KRS 630.060(2), "[n]o complaint shall be received by the court designated worker alleging habitual truancy unless an adequate assessment of the child has been performed pursuant to KRS 159.140(1)(c), (d), and (f), unless it can be shown that the assessment could not be performed due to the child's failure to participate." According to KRS 159.140(1),

The director of pupil personnel, or an assistant appointed under KRS 159.080, shall:

* * *

(c) Acquaint the school with the home conditions of a habitual truant as described in KRS 159.150(3), and the home with the work and advantages of the school;

(d) Ascertain the causes of irregular attendance and truancy, through docu-

mented contact with the custodian of the student, and seek the elimination of these causes; [and]

\* \* \*

(f) Attempt to visit the homes of students who are reported to be in need of books, clothing, or parental care[.]

Our Court has reviewed these statutes numerous times and has frequently held that subject matter jurisdiction was lacking. See e.g., *S.B. v. Commonwealth,* 396 S.W.3d 928, 929 (Ky.App.2013); *N.K. v. Commonwealth,* 324 S.W.3d 438; *T.D. v. Commonwealth,* 165 S.W.3d 480 (Ky.App. 2005); *C.F.C. v. Commonwealth,* No. 2010–CA–000573–ME, 2010 WL 4026099 (Ky. App. Oct. 15, 2010). Although unpublished, the case of *C.F.C. v. Commonwealth,* succinctly sets forth the Court's rationale and for that reason, we quote it:

> This Court has previously interpreted this statute, in conjunction with KRS 630.060(2), to require compliance with its mandates before a complaint may be received by the courts. *T.D. v. Commonwealth,* 165 S.W.3d 480 (Ky.App. 2005). KRS 630.060(2) states that:
>
>> No complaint shall be received by the court designated worker alleging habitual truancy unless an adequate assessment of the child has been performed pursuant to KRS 159.140(1)(c), (d), and (f), unless it can be shown that the assessment could not be performed due to the child's failure to participate.
>
> Upon a reading of both KRS 630.060(2) and KRS 159.140, this Court previously held that the legislature intended to make the requirements of KRS 159.140 "a matter of subject matter jurisdiction." *T.D. v. Commonwealth,* at 482. Indeed, we noted that although the director of pupil personnel's duties as expressed in KRS 159.140 "are stated in broad language, the legislature's later enactment

of KRS 630.060 shows its intent to require the Director to perform those goals in a particular case before bringing a child before the court as a habitual truant." *Id.* In *T.D. v. Commonwealth,* we found that although the Director of Pupil Personnel's duties may be burdensome under such an interpretation, *it was the intention of the legislature to establish rigorous prerequisites before a Director may resort to the court for intervention into a juvenile truancy matter. Id.* We acknowledged the reality, however, that there would inevitably be instances where home visits are impossible and where it may be impossible to ascertain the causes of the truancy if such efforts are frustrated by a lack of cooperation by the student and parent(s) or guardian(s). *Id.* We determined that, in those situations, the duty would fall upon the court designated worker to determine whether an "adequate assessment" had been performed under the language of the statute. *Id.* Additionally, we found that the legislature has provided that where the difficulty in complying with the statute is due to a child's failure to participate, the assessment may be abandoned upon such a showing. *Id.* at 482–483.

*C.F.C. v. Commonwealth,* No. 2010–CA–000573–ME, 2010 WL 4026099 at \*3 (emphasis added).

■ Accordingly, "KRS 630.060(2) requires that the duties of the director of pupil personnel, or an assistant, set forth in KRS 159.140(1) be performed prior to filing a complaint or petition alleging habitual truancy. These requirements are a matter of subject matter jurisdiction." *S.B. v. Commonwealth,* 396 S.W.3d at 929. Recently, the Court in *S.B.* noted that the "Administrative Office of the Courts has a form entitled 'Affidavit and Truancy Evaluation Form.' This form has spaces that

can be filled in detailing how these requirements have been met." *S.B.*, 396 S.W.3d at 930. In *S.B.*, this Court stated that the Affidavit and Truancy Evaluation Form, which was attached to the complaint alleging S.B. was a habitual truant, was "virtually blank. The only information listed which even remotely resemble[d] the requirements of KRS 159.140 state[d] that Child's mother was sent three letters indicating Child was missing school." *S.B.*, 396 S.W.3d at 930.

■ In all three of the cases before us in this appeal more information was given than in the *S.B.* case, but it is still statutorily deficient. The only description on the Affidavit and Truancy Evaluation Form for "home conditions" was: "No visible barriers to attendance." Not only does this appear to be a generic answer that schools in Shelby County use for that section of the form (because it is written on all three forms in this case, even though the juveniles attend two different schools), but it is also too ambiguous an answer for us to ascertain what is meant by it and does not satisfy the KRS 159.140(1)(c) requirement that the DPP "[a]cquaint the school with the home conditions of a habitual truant." Moreover, in all three cases, many areas of the Affidavit and Truancy Evaluation Forms were left blank.

## A. V.B.'S CASE

■ In V.B.'s case, even the "family information" section was left blank, including the sub-section where "child & family medical conditions or illness" was listed, despite the fact that on the next page, the "cause(s) of irregular attendance and truancy" section stated: "Father states that mom has been in the hospital. Student was supposed to return to school on 10/13/14, with medical notes for absences, but did not." During her initial court appearance in the matter, V.B.'s mother and

father were present, and her mother informed the court that she (*i.e.*, V.B.'s mother) had been in the hospital from September 18th to October 24th, she had had several surgeries, and when the school was calling the home, she was in the ICU in a coma and on a ventilator. The mother also stated that V.B. had an upcoming surgery. Defense counsel asserted that the reason the parents were bringing this up at the hearing was because they were trying to show that the school had not done everything it was supposed to do in terms of documentation and intervention to eliminate the cause of V.B.'s truancy before filing the complaint. Defense counsel stated that the fact that V.B.'s mother was in a coma and in the hospital was the type of thing that the DPP should be familiar with and should seek to offer help to the child during that time, and that this is precisely the type of situation that KRS 159.140 and KRS 630.060 cover, *i.e.*, that the school is required to acquaint themselves with what is going on at home and document the intervention strategies. Defense counsel argued that the school is supposed to show what they have done to help the family. The defense's exchange with the court then went as follows:

> Defense counsel: "They [the school] are supposed to show what it is that they have done to help this family."
>
> Court: "I bet you a dime to a donut that that has happened."
>
> V.B.'s father: "No, it hasn't."
>
> Defense counsel: "It is very clear it hasn't in this case."
>
> Court: "It is not very clear to me, and I've not heard the evidence, but I'm going to hear all the evidence in two weeks [at the adjudication hearing]."

As previously noted, at the adjudication hearing, V.B. admitted to the charge of being a habitual truant, but she conditioned her admission on her being able to

appeal the lack of subject matter jurisdiction claim. Based upon the court's speculative statement during V.B.'s initial appearance in the matter that it "bet" the school had made attempts to assist the child and family as statutorily required prior to filing the complaint in court, the court did not actually know if the school had done what was necessary to invoke the court's subject matter jurisdiction. V.B.'s behavior detail report stated that the first truancy letter (for 3 unexcused absences) was sent on September 18, 2014, which was the date that V.B.'s mother went into the hospital, according to statements made during V.B.'s initial court appearance, and the remaining truancy letters and the home visits were all conducted when her mother said she was in the hospital. The resolution details for the entry on the behavior detail report concerning the September 26, 2014 final notice letter stated that V.B.'s father said that her mother had been in the ICU for about two weeks, yet the DPP wrote that there were "[n]o visible barriers to attendance" as of that date. The only resolution written on the report was that V.B. was supposed to provide doctor's notes for her missed school days. There was nothing about how the school was assisting V.B. and her family as required by KRS 159.140, and each of the attempts by the school occurred on dates that V.B.'s mother was hospitalized. Additionally, as previously noted, the DPP did not satisfy the requirement that he acquaint the school with the child's home conditions when he simply wrote that there were "no visible barriers to attendance." Consequently, the family court did not have subject matter jurisdiction over V.B.'s case because school officials failed to comply with the "rigorous" statutory requirements prior to filing the complaint in court. *See S.B. v. Commonwealth,* 396 S.W.3d at 930. Furthermore, it is evident that the court did not ensure that it had subject matter jurisdiction over this child's case because it merely speculated that the school had done all that was required of it before filing the complaint.

## B.  A.M.V.'S CASE

■ In A.M.V.'s case, much of the Affidavit and Truancy Evaluation Form was also left blank, including the sections on "family information," "clothing needs," and "agencies involved." However, perhaps the most disturbing thing about that form was that the "cause(s) of irregular attendance and truancy" section was also left blank. It cannot be discerned if an investigation was conducted at all. Further, as noted previously, under "home conditions," it merely stated that there were "[n]o visible barriers to attendance," yet approximately one month later during a hearing, there were questions asked by the county attorney about whether A.M.V. and her mother were homeless.

Pursuant to KRS 159.140(1)(d), "[t]he director of pupil personnel, or an assistant appointed under KRS 159.080, shall: ... Ascertain the causes of irregular attendance and truancy, through documented contact with the custodian of the student, and seek the elimination of these causes." This clearly was not done in A.M.V.'s case, as evidenced by the fact that the section of the Affidavit and Truancy Evaluation Form that concerns the "cause(s) of irregular attendance and truancy" was left blank. Furthermore, as noted *supra,* the DPP did not satisfy the KRS 159.140(1)(c) requirement that he acquaint the school with the child's home conditions when he wrote the ambiguous and generic response "no visible barriers to attendance," on the section of the form concerning home conditions. This did not satisfy the requirement because the DPP used this as the answer to that question on each child's form involved in this appeal, without pro-

viding any further explanation for what that even means, and without providing specific information about the conditions of A.M.V.'s home. Consequently, the family court did not have subject matter jurisdiction over A.M.V.'s case because the school did not comply with KRS 630.060(2) and KRS 159.140(1) before filing the complaint in court.

## C. J.L.C.'S CASE

■ In J.L.C.'s case, the "family information" section, including the "child & family medical conditions or illness" section, was left blank, but on the next page, as the "cause(s) of irregular attendance and truancy," it stated: "Father said [J.L.C.] has been sick but they just haven't turned in the notes." During disposition, defense counsel informed the court that J.L.C.'s mother was suffering from cancer and that she had been in the hospital and had surgeries, and that this was part of the reason why J.L.C. had missed some school. Counsel also stated that J.L.C. had been sick and that the family was without a vehicle. A school representative informed the court that the child had taken advantage of the family resource center by getting some food from school. It is unclear when this occurred, but it was not noted on the Affidavit and Truancy Evaluation Form.[6]

The DPP did not adequately acquaint the school with the child's home conditions simply by writing "no visible barriers to attendance" on the section of the form concerning home conditions. This is further evidenced by the fact that he wrote "no visible barriers to attendance" for that section of each of the other juvenile's

forms involved in this appeal. Consequently, the family court did not have subject matter jurisdiction over J.L.C.'s case because the school did not comply with KRS 630.060(2) and KRS 159.140(1) before filing the complaint in family court.

Accordingly, the orders entered by the Shelby Family Court adjudging these three juveniles to be habitual truants are vacated because the family court lacked subject matter jurisdiction over their cases.

ALL CONCUR.

---

**6.** It is unclear whether the DPP was informed about J.L.C.'s mother's illness and the lack of a family vehicle prior to the disposition hearing, but these are facts that the DPP should have discovered during the home visits. Although there is no mention of these issues on the Affidavit and Truancy Evaluation Form, several areas of the form were left blank and other areas of the form had insufficient information, such as "[n]o visible barriers to attendance" in answering the question about home conditions.